[No. 56343-2-I. Division One. May 22, 2006.]

THE STATE OF WASHINGTON, *Respondent*, v. L.B., *Appellant*.

■■■■■■■■■

■■■■■■■■■

*Dana M. Lind* (of *Nielsen, Broman & Koch, P.L.L.C.*), for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Maurice A. Classen, Deputy*, for respondent.

■■■■■■■

■■■■

■■■■■■

¶1 PER CURIAM — The trial court found L.B. guilty of fourth degree assault after a bench trial. L.B. argues that the trial court relieved the State of its burden to prove lack of self-defense beyond a reasonable doubt because it imposed the wrong standard for self-defense. The State concedes that the wrong standard was used but argues that it was harmless error. Because we agree that any error was harmless, we affirm.

## FACTS

¶2 L.B. and J.G. went to school together at Redmond Junior High School. Around lunchtime on December 7, 2004, L.B. told J.G. about a box of cigarettes L.B. had in his locker. J.G. testified that, after classes let out that day, he was taking books out of his locker. L.B. approached him and asked J.G. if J.G. had reported that L.B. had cigarettes in his locker. J.G. denied having tattled. L.B. responded that if J.G. wanted to fight, "then we should just do it right here right now." J.G. told L.B. he had no reason to fight and turned back to his locker, blocking L.B.'s view of the locker. J.G. reached into the locker to pull out a book when he saw a fist coming toward his jaw out of the corner of his eye. J.G. testified that L.B. struck him in his jaw. J.G. testified that

he then saw L.B. speak with two other people before he left the school. J.G. gathered his belongings and went to the car to meet his mother. His mother contacted the school's resource officer.

¶3 L.B. testified that he did hit J.G. in self-defense. He went to confront J.G. about some statements J.G. made to other students and told J.G. to stop talking about him behind his back. J.G. responded by threatening to shoot L.B. with a gun. J.G. then reached into his locker, and L.B. testified that he thought J.G. was reaching for a weapon. L.B. testified that he knew of a prior weapons-related incident involving J.G. Out of fear, L.B. hit J.G. L.B. then got on a bus and went home.

¶4 J.G. denied ever having been suspended for possessing a knife or ever owning a weapon. He denied making any threats to provoke L.B. The school's resource officer testified that the school had not experienced problems with students hiding contraband in their lockers, although it was possible they had contraband without the officer's knowledge. Another student, P.K., testified for the State as a witness to the event. The defense impeached his trial testimony using a prior written statement. The trial court found his testimony impeached and incredible.

¶5 Before issuing its ruling, the trial court noted that 11 *Washington Practice: Washington Pattern Jury Instructions: Criminal* 17.04 (2d ed. 1994) (WPIC) entitles a defendant to act in self-defense if he had a good faith belief on reasonable grounds that he was in actual danger of great bodily harm. The court summarized the question as whether L.B. believed that J.G. had a weapon and noted that the "evidence that bears upon that is the conduct of the individuals themselves."

¶6 In its written findings and conclusions, the trial court found that L.B.'s "approach to J.G. negated any reasonable belief that his safety or person was threatened," that L.B.'s actions after hitting J.G., including walking away from J.G. and getting on a bus, negate L.B.'s good faith belief that he was threatened by J.G., and that J.G was more credible than L.B. The trial court concluded that L.B.'s use of force

was not lawful because he had no reasonable belief that he was about to be injured by J.G. The trial court also concluded in the alternative that L.B. was not entitled to assert a defense of self-defense because he was the first aggressor.

## DISCUSSION

¶7 The State must prove every element of the crime charged beyond a reasonable doubt. WASH. CONST. art. I, § 3; *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). When the defendant raises the issue of self-defense, the absence of self-defense becomes another element of the offense that the State must prove beyond a reasonable doubt. *State v. Acosta*, 101 Wn.2d 612, 615-16, 683 P.2d 1069 (1984). It is constitutional error to relieve the State of its burden of proving the absence of self-defense. *State v. Walden*, 131 Wn.2d 469, 473, 932 P.2d 1237 (1997). Thus, this error can be raised for the first time on appeal. *See State v. Redwine*, 72 Wn. App. 625, 865 P.2d 552 (1994).

¶8 L.B. argues and the State agrees that the applicable standard for self-defense is set out in WPIC 17.02. "The use of force upon or toward the person of another is lawful when used by a person who reasonably believes that he is about to be injured and when the force is not more than is necessary." WPIC 17.02, at 196 (with applicable bracketed portions included). *See also* RCW 9A.16.020(3) (the use of force upon the person of another is not unlawful when "used by a party about to be injured" "in case the force is not more than is necessary"). The standard the trial court recited in its oral decision came from WPIC 17.04.

¶9 Prior to 1994, WPIC 17.04 referred merely to injury, not great bodily harm:

> If a person acting as a reasonably prudent person mistakenly believes [himself] [herself] to be in danger [*of injury*] [or] [of an offense being committed against [him] [her] or [his] [her] property], [he] [she] has the right to defend [himself] [herself] by the use of lawful force against that apparent *injury* or offense even if [he] [she] is not actually in such danger.

WPIC 17.04 cmt. (emphasis added). In 1994, the Washington Supreme Court Committee on Jury Instructions changed WPIC 17.04 to state the law on apprehension of danger as set forth in *State v. Miller*, 141 Wash. 104, 105-06, 250 P. 645 (1926) and its progeny. *See also State v. Dunning*, 8 Wn. App. 340, 342 n.2, 506 P.2d 321 (1973). In doing so, the Committee lifted language from the *Miller* opinion that referred to danger of great bodily harm (rather than danger of injury) and inserted it into WPIC 17.04. *See* WPIC 17.04 cmt. (quoting *Miller*, 141 Wash. at 105-06). In *Miller*, the State charged the defendants with second degree assault. *Miller*, 141 Wash. at 104. The instructions to the jury in that case did not elaborate on the subjective element of self-defense. *Miller*, 141 Wash. at 105. In correcting the instruction, the Washington Supreme Court established the subjective apprehension of danger test using the language "great bodily harm." *Miller*, 141 Wash. at 105.

▆ ¶10 According to the plain language of RCW 9A-.16.020(3), a person has a right to use force to defend himself against danger of injury "in case the force is not more than is necessary." The term "great bodily harm" places too high of a standard for one who tries to defend himself against a danger less than great bodily harm but that still threatens injury. Where the defendant raises a defense of self-defense for use of nondeadly force, WPIC 17.04 is not an accurate statement of the law because it impermissibly restricts the jury from considering whether the defendant reasonably believed the battery at issue would result in mere injury.[1] *Cf. Walden*, 131 Wn.2d at 477 (instruction impermissibly restricted jury from considering "the defendant's subjective impressions of all the facts and circumstances").

---

[1] The use of the phrase "great bodily harm" in self-defense instructions has also been disapproved in cases where deadly force was used. *Walden*, 131 Wn.2d at 475 n.3 ("because 'great bodily harm' is an element of first degree assault and is distinctly defined in that context, it should not be used in instructions on self-defense" (citing WPIC 2.04.01 cmt.)); *see also State v. Rodriguez*, 121 Wn. App. 180, 87 P.3d 1201 (2004).

■ ■ ¶11 The next question is whether this error resulted in prejudice requiring reversal. "[A] jury instruction that relieves the prosecution of its burden to prove an element of a crime is subject to harmless error analysis unless the error is structural and affects the framework under which the trial proceeds." *State v. Eaker*, 113 Wn. App. 111, 120, 53 P.3d 37 (2002) (citing *State v. Jennings*, 111 Wn. App. 54, 62-63, 44 P.3d 1 (2002)). An error is harmless if it appears beyond a reasonable doubt that it did not contribute to the verdict. *Eaker*, 113 Wn. App. at 120. It is the State's burden to prove the error was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967); *Eaker*, 113 Wn. App. at 120. " 'Applied to an element omitted from, or misstated in, a jury instruction, the error was harmless if that element is supported by uncontroverted evidence.' " *Eaker*, 113 Wn. App. at 120 (quoting *Jennings*, 111 Wn. App. at 64). The error here was not structural[2] and is therefore subject to harmless error analysis.

■ ¶12 The trial court found J.G.'s testimony more credible than L.B.'s testimony. "Credibility determinations are for the trier of fact and cannot be reviewed on appeal." *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990). The trial court found that there was no evidence J.G. possessed a gun the day of the assault, that L.B.'s approach to J.G. negated a reasonable belief that his safety was threatened, and that his action after hitting J.G. negated a good faith belief that he was threatened by J.G. The trial court concluded that L.B.'s "use of force was not lawful because he had no reasonable belief that he was about to be injured by J.G." Thus, the trial court found *no* threat of injury; it did not find only that there was no threat of "great bodily harm." The trial court's findings are supported by

---

[2] *See Arizona v. Fulminante*, 499 U.S. 279, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991) (listing examples of structural errors such as the absence of counsel for a criminal defendant, a judge who is not impartial, unlawful exclusion of members of the defendant's race from a grand jury, the right to self-representation at trial, the right to public trial, and involuntary statements or confessions of the defendant).

substantial evidence, and its conclusions are supported by its findings. *See State v. Vickers*, 148 Wn.2d 91, 116, 59 P.3d 58 (2002) (" 'On appeal, the court reviews solely whether the trial court's findings of fact are supported by substantial evidence and, if so, whether the findings support the trial court's conclusions.' " (quoting *Nordstrom Credit, Inc. v. Dep't of Revenue*, 120 Wn.2d 935, 939-40, 845 P.2d 1331 (1993)). Had the trial court substituted the word "injury" in place of "great bodily harm" in its recitation of the standard for self-defense, it would have reached the same conclusion that the State had disproved L.B.'s self-defense claim. Thus, the misstated standard of self-defense was harmless beyond a reasonable doubt.

¶13 The trial court made an alternative conclusion that L.B. was the first aggressor and thus not entitled to make a claim of self-defense. L.B. argues that the first aggressor rationale was not applicable here and that the trial court thus wrongfully deprived L.B. of his theory of self-defense. *See State v. Wasson*, 54 Wn. App. 156, 159-60, 772 P.2d 1039 (1989) (holding that the inclusion of an aggressor instruction may wrongfully deprive a defendant of his theory of self-defense, when that theory is raised). Here, however, the trial court specifically concluded that the State disproved L.B.'s theory of self-defense. Thus, even if the trial court's consideration of an aggressor instruction was improper, the error was harmless.

¶14 We affirm.