[No. 61722-2-I.   Division One.   March 1, 2010.]

THE STATE OF WASHINGTON, *Respondent*, v. ELI PINEDA-PINEDA, *Appellant*.

*Sheryl Gordon McCloud* (of *Law Offices of Sheryl Gordon McCloud*), for appellant.

*Richard A. Weyrich, Prosecuting Attorney*, and *Trisha D. Johnson, Deputy*, for respondent.

¶1 APPELWICK, J. — Eli Pineda-Pineda appeals his sentence enhancement for delivery of a controlled substance in a school zone, as authorized by RCW 69.50.435. Because he was convicted of the crime based on accomplice liability and was not physically present in the school zone when the delivery occurred, he argues the enhancement should be vacated. Without explicit statutory authorization for imposition of the enhancement on the basis of accomplice liability, the defendant's own acts must form the basis for the enhancement. We vacate the sentence enhancement.

¶2 He also argues his conviction for conspiracy to deliver a controlled substance must be vacated, because the information and the to-convict instruction omitted the "substantial step" element. Although both the charging document and jury instructions were defective, the error was harmless beyond a reasonable doubt. The charges for delivery provided the necessary notice, and his conviction for the underlying delivery necessarily proved the substantial step. We affirm his conviction for conspiracy to deliver a controlled substance.

## FACTS

¶3 In the spring of 2007, Patricia Hanson was arrested for possession of cocaine after a traffic stop. She agreed to be an informant to avoid prosecution, contacting a narcotics detective who wanted to purchase cocaine from her sup-

plier, Eli Pineda-Pineda. Hanson explained that in the past, Pineda-Pineda, his wife, and another woman would usually be present during the drug transactions.

¶4 On May 4, 2007, working with Detective Chris Fuller of the Skagit County Interlocal Drug Enforcement Unit, Hanson called Pineda-Pineda to buy cocaine. Pineda-Pineda told Hanson to meet him at the Valley Cafe. Pineda-Pineda drove by Hanson in a blue Cavalier and motioned to Hanson to follow him. After Hanson followed Pineda-Pineda onto Donnelly Road, they pulled over. Pineda-Pineda got out of his car and sold her the cocaine for cash provided by law enforcement, through Hanson's window. After Pineda-Pineda departed, Hanson gave the cocaine to Detective Fuller, who had been waiting nearby.

¶5 The second transaction, on May 9, 2007, occurred in a substantially similar manner as the May 4 transaction. Under the supervision of Detective Fuller, Hanson called Pineda-Pineda to schedule another cocaine purchase. Fuller was with Hanson when she placed the call. Hanson arranged to meet Pineda-Pineda at the Valley Café. The blue Cavalier appeared, this time with two women inside. The women motioned for Hanson to follow them, and the two vehicles travelled down Avon Allen Road, where they pulled onto the shoulder near Bennett Road. Detective Fuller observed Hanson get out of her car, into the Cavalier, and then back into her own car and depart. Pineda-Pineda was not in the vehicle. Hanson then met with Detective Fuller to give him the cocaine.

¶6 Sharon McCormick, the head dispatcher of the Mount Vernon School District, testified that more than one school bus stop is visible at the intersection of Avon Allen Road and Bennett Road, where the May 9 transaction occurred. She also testified that there are various bus stops at and around Donnelly Road, the location of the May 4 transaction. McCormick explained that members of the public could identify the location of the school bus stops by calling her, calling the bus garage, or visiting school web sites.

¶7 Detective Fuller testified that two of the stops along Donnelly Road were within 400 feet of the May 4 location. He also testified that he observed a school bus driving along Avon Allen Road just before the May 9 transaction. There was a bus stop across the street, approximately 20-25 feet away from where the vehicles pulled over.

¶8 Hanson arranged another transaction with Pineda-Pineda on June 21, 2007, that was to occur in the same manner as the other plans. Detective Fuller expected the deal to take place near Highway 20 and La Conner-Whitney. However, once Pineda-Pineda left his house and began driving, Detective Fuller decided that a marked patrol unit would stop and arrest him based on the probable cause of the prior buys.

¶9 After the arrest, Detective Fuller served a search warrant at Pineda-Pineda's residence. There, Detective Fuller came into contact with two females, whom he later identified as the two women who had made the May 9 delivery to Hanson. Their names were Celene Campos-Jaimes and Anabel Camacho Pineda. The search of the home and the Cavalier revealed cocaine and large amounts of money.

¶10 The State charged Pineda-Pineda with seven drug-related crimes, including two counts for delivery of a controlled substance (cocaine) and conspiracy to deliver a controlled substance (cocaine). The two delivery charges were based on the events of May 4 and May 9. The conspiracy charge was based on the events spanning May 4 through June 21.

¶11 The jury returned guilty verdicts on all counts. It also returned special verdicts on both delivery convictions, finding that the defendant sold or delivered a controlled substance to a person within 1,000 feet of a school bus route stop designated by a school district. The court imposed a standard range sentence and added two school zone enhancements of 24 months each.

¶12 Pineda-Pineda timely appealed.

## DISCUSSION

### I. School Zone Sentence Enhancement

¶13 In *State v. Silva-Baltazar*, 125 Wn.2d 472, 480-84, 886 P.2d 138 (1994), the Supreme Court affirmed sentencing enhancements for accomplices who were physically present in a school zone when the crime occurred. While *Silva-Baltazar* leaves no doubt that an accomplice may receive a school zone sentencing enhancement when the accomplice is physically present in the school zone, it explicitly deferred the question of whether RCW 69.50.435 applies to accomplices not within the school zone:[1]

> We reiterate that this case involves Defendants who were themselves within 1,000 feet of a school bus stop during the events of the crime, and confine ourselves to the facts here present. We do not decide whether RCW 69.50.435 applies to accomplices who are not within the drug-free zone themselves when another participant in the crime engages in the specified drug activity within the drug-free zone.

125 Wn.2d at 480.

¶14 Pineda-Pineda presents a question of first impression: where there is no evidence either that Pineda-Pineda determined the precise location of the delivery or that he was physically present in the school zone when the delivery occurred,[2] he asks this court to consider whether he can be held strictly liable for a participant's decision to conduct the transaction in the school zone. As discussed above, the May 9 transaction formed the basis for count II, delivery of a controlled substance, for which the jury found Pineda-Pineda guilty through accomplice liability.

---

[1] At trial, defense counsel moved to dismiss the school zone enhancement for the May 9 delivery, based on *Silva-Baltazar*, where the court explicitly deferred whether the enhancement could apply to an accomplice not physically present in the school zone. 125 Wn.2d at 480. The trial court denied the motion. Pineda-Pineda moved for reconsideration of the denial of his motion to dismiss, which the court also denied.

[2] Pineda was not physically present at the May 9 transaction between Hanson and the two women. According to Detective Fuller and McCormick, the transaction took place within 1,000 feet of a school zone.

¶15 Pineda-Pineda first makes a plain language argument, pointing out that the accomplice liability statute itself, RCW 9A.08.020, contains no language making one person accountable for sentence enhancements based on accomplice liability.[3] Pineda-Pineda is correct that the accomplice liability statute cannot be the basis to impose a sentencing enhancement on an accomplice. *State v. McKim*, 98 Wn.2d 111, 115-16, 653 P.2d 1040 (1982) (analyzing RCW 9A.08.020 and concluding that it did not provide a triggering device for penalty enhancement, as the old accomplice liability statute, former RCW 9.01.030 (1909), did). RCW 9A.08.020 refers only to "the crime," with no mention of sentence enhancements or other circumstances surrounding the commission of the crime. Further, Pineda-Pineda argues, if RCW 9A.08.020 allowed for imposition of enhanced sentences upon accomplices based on the acts of other participants, the sentence enhancement statutes such as the firearm enhancements statute, RCW 9.94A.533, would be unnecessary.

¶16 Because the accomplice liability statute does not contain a triggering device for penalty enhancement, the authority to impose a sentencing enhancement on the basis of accomplice liability must come from the specific enhancement statute. For instance, the firearm enhancement stat-

---

[3] RCW 9A.08.020 reads:

(1) A person is guilty of a crime if it is committed by the conduct of another person for which he is legally accountable.

(2) A person is legally accountable for the conduct of another person when:

(a) Acting with the kind of culpability that is sufficient for the commission of the crime, he causes an innocent or irresponsible person to engage in such conduct; or

(b) He is made accountable for the conduct of such other person by this title or by the law defining the crime; or

(c) He is an accomplice of such other person in the commission of the crime.

(3) A person is an accomplice of another person in the commission of a crime if:

(a) With knowledge that it will promote or facilitate the commission of the crime, he

(i) solicits, commands, encourages, or requests such other person to commit it; or

(ii) aids or agrees to aid such other person in planning or committing it; or

(b) His conduct is expressly declared by law to establish his complicity.

ute, RCW 9.94A.533, contains language demonstrating the legislature's intent to extend accomplice liability into the sentencing realm. RCW 9.94A.533(3) reads, "The following additional times shall be added to the standard sentence range for felony crimes committed after July 23, 1995, if the offender or an accomplice was armed with a firearm as defined in RCW 9.41.010." *See State v. Bilal*, 54 Wn. App. 778, 781-84, 776 P.2d 153 (1989) (upholding a firearm enhancement where the principal knew his accomplice was armed, and in so doing, discussing former RCW 9.94A.125 (1981) and concluding that the legislature intended to extend accomplice liability to the firearm enhancement statute).

¶17 In contrast to that statute, the school zone enhancement statute, RCW 69.50.435, provides that

> (1) Any person who violates RCW 69.50.401 by . . . delivering, or possessing with the intent to . . . sell, or deliver a controlled substance . . .
>
> . . . .
>
> (c) Within one thousand feet of a school bus route stop designated by the school district;
>
> . . . .
>
> may be punished by a fine . . . or by imprisonment of up to twice the imprisonment otherwise authorized by this chapter.

The school zone enhancement statute does not authorize accomplice liability like the firearm enhancement statute.

¶18 Pineda-Pineda argues a defendant cannot be held strictly liable for the school zone enhancement without evidence that he was physically present in the school zone at the time of delivery. He argues no school zone sentence enhancement can be applied under accomplice liability theory without express authorization in the law. Pineda-Pineda contends that *McKim*, 98 Wn.2d at 117, *State v. Davis*, 101 Wn.2d 654, 657-58, 682 P.2d 883 (1984), and some of their progeny, including *State v. Roberts*, 142 Wn.2d

471, 14 P.3d 713 (2000),[4] and *In re Personal Restraint of Howerton*, 109 Wn. App. 494, 36 P.3d 565 (2001), compel the conclusion that he is liable only for the substantive crime of delivery of a controlled substance where the evidence does not show he was present in the school zone.

¶19 In *McKim*, the court held that "for the deadly weapon enhancement provision to apply to an unarmed codefendant, the State must prove beyond a reasonable doubt that the accused knew his or her accomplice was armed with a deadly weapon at the time of the commission of the crime." 98 Wn.2d at 118. However, after the court decided *McKim*, the legislature, in former RCW 9.94A.125 (1983), superseded *McKim*'s holding by revising the firearm enhancement scheme to read, " '[T]he jury shall, if it find[s] the defendant guilty, also find a special verdict as to whether or not the defendant or an accomplice was armed with a deadly weapon at the time of the commission of the crime.' " *Bilal*, 54 Wn. App at 780 (emphasis omitted) (second alteration in original) (quoting former RCW 9.94A.125).

¶20 While the legislature superseded the holding in *McKim* by amending the firearm enhancement statute to allow enhancement on the basis of accomplice liability,

---

[4] In *Roberts*, the question was whether the State could impose the death penalty on a defendant where that defendant was convicted solely as an accomplice to premeditated first degree murder. 142 Wn.2d at 505. However, the analysis in that case is not relevant here, because federal Eighth Amendment jurisprudence and state constitutional law mandated a fact specific inquiry into whether the accomplice had the requisite mens rea or actus reus sufficient to warrant imposition of the death penalty. *Id.* at 505-06 (citing *Tison v. Arizona*, 481 U.S. 137, 158, 107 S. Ct. 1676, 95 L. Ed. 2d 127 (1987)).

The school zone enhancement, which contains no explicit authorization trigger for accomplice liability, differs materially from the aggravating factors in *Roberts*, which specifically contemplate accomplice liability. *See* RCW 10.95.020(5), .070(4); *see also Howerton*, 109 Wn. App. at 499-500 (explaining that the legislature's intent was for the aggravating factors listed in RCW 10.95.020 to apply to persons convicted as accomplices to first degree premeditated murder).

Nor is *Roberts* similar to the firearm sentencing enhancement statute, where the legislature made a policy choice to impose strict liability on accomplices and principals where either one commits a crime with a firearm. *See* RCW 9.94A.533. The policy choice there did not implicate Eighth Amendment concerns, as the State's choice to seek the death penalty for an accomplice did in *Roberts*.

*McKim*'s explanation of the difference between liability for substantive crimes, as established by RCW 9A.08.020, and liability for sentencing enhancements is still valid.[5] The *McKim* court explained:

> We recognize that in most crimes involving the use of deadly weapons, the coparticipants are aware that one or more of them is armed. That is no reason, however, for imposing strict liability [of penalty enhancements] on all coparticipants without regard to each participant's knowledge that another is so armed. Such strict liability was possible under the old accomplice liability statute . . . . The new complicity statute, by contrast, makes an accomplice equally liable only for the substantive crime—any sentence enhancement must depend on the accused's own misconduct.

*McKim*, 98 Wn.2d at 117.

¶21 The Supreme Court reaffirmed this distinction in *Davis*. In addressing whether a defendant could be convicted as an accomplice to first degree robbery without proof that the defendant knew the principal was armed with a deadly weapon, the court considered the difference between accomplice liability for the substantive crime and for the purpose of sentence enhancements. *Davis*, 101 Wn.2d at 657-58. "As to the substantive crime, the law has long recognized that an accomplice, having agreed to participate in a criminal act, runs the risk of having the primary actor exceed the scope of the preplanned illegality." *Id.* at 658 (citing *State v. Carothers*, 84 Wn.2d 256, 264, 525 P.2d 731 (1974)).

¶22 We hold that, where there is no explicit statutory authorization for imposition of a sentence enhancement on an accomplice, the defendants' own acts must form the basis for the enhancement. The uncontroverted facts are that Pineda-Pineda was not present in the school zone for the May 9 delivery. We vacate the sentence enhancement of

---

[5] This court has already relied on the *McKim* court's distinction in *Howerton*, 109 Wn. App. at 501, stating that "its analysis regarding the restricted application of the complicity statute to accountability for sentence enhancements in the absence of specific legislative direction is sound."

count II and decline to address Pineda-Pineda's due process argument.

## II. Jury Instruction on the Enhancement

■■ ¶23 Pineda-Pineda argues the jury was improperly instructed on how to impose the school zone sentence enhancement, as it informed the jury "all twelve of you must agree on the answer to the special verdict."[6]

¶24 *State v. Goldberg* involved an instruction on an aggravating factor that read: " 'In order to answer the special verdict form "yes", you must *unanimously* be satisfied beyond a reasonable doubt that "yes" is the correct answer. If you have a reasonable doubt as to the question, you must answer "no".' " 149 Wn.2d 888, 893, 72 P.3d 1083 (2003). The court examined the instruction in a context where the jury returned a special verdict in the negative, and the trial court then polled the jury on how they had voted on the aggravating factor. *Id.* at 891. One juror revealed to the judge that he had voted no and others had voted yes. *Id.* The judge then sent the jury back to reach a unanimous conclusion. *Id.*[7] On review, the court framed the question presented as "whether such unanimity [returning a 'no'] is required." *Id.* at 893. It then stated, "[W]e hold it is not." *Id.* Analyzing the jury's performance, the court noted, "[I]t answered 'no' to the special verdict form, where under instruction 16, unanimity is not required in order for the verdict to be final. We find no error in the jury's initial verdict in this case." *Id.* at 894.

¶25 Division Three had occasion to apply *Goldberg* in a case with substantially similar facts as Pineda-Pineda. *State v. Bashaw*, 144 Wn. App. 196, 182 P.3d 451, *review granted*, 165 Wn.2d 1002, 198 P.3d 512 (2008). Bashaw argued the enhancement instruction articulated

---

[6] Having already vacated the enhancement on count II on other grounds, our resolution of this issue affects only count I.

[7] In a holding that is not material to the current case, the court reasoned that it was "error for the trial court to order continued deliberations." *Goldberg*, 149 Wn.2d at 894.

an erroneous unanimity requirement, just as Pineda-Pineda argues here. *Id.* at 200. Identical to the contested language in the current case, the jury instruction in *Bashaw* stated, " 'Since this is a criminal case, all twelve of you must agree on the answer to the special verdict.' " *Id.* at 201. Division Three looked to the comments to 11A *Washington Practice: Washington Pattern Jury Instructions: Criminal* 160.00, at 395 (2d ed. 1994) (on which the instruction in *Goldberg* was based) for guidance. *Id.* at 202. The comments note that "[a]fter *Goldberg*, it was not clear whether the jury always needs to be unanimous in order to answer a special verdict question 'no.' " 11A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 160.00 cmt. at 630 (3d ed. 2008) (WPIC). Division Three then held the jury instruction's unanimity requirement was proper:

> We do not believe that the court intended to hold that special verdicts were to have unanimity requirements different from general verdicts. There is no discussion in *Goldberg* of the pattern instructions. There is no discussion of special verdicts in general or the policy of permitting one juror to acquit on a special verdict. In short, there is simply no indication that either the pattern instructions or the policy of unanimous special verdicts were at issue in *Goldberg*.

*Bashaw*, 144 Wn. App. at 202.

¶26 We hold that the jury instruction here properly stated the unanimity requirement for special verdicts. This holding accords with 11A WPIC 160.00, as well. The WPIC committee modified the instruction in accordance with *Bashaw*. 11A WPIC 160.00 cmt. at 631. Finally, there is no evidence that the instruction confused the jury, as it did in *Goldberg*. 149 Wn.2d at 891. Rather, the jury here unanimously agreed Pineda-Pineda was present in a school zone, rendering any confusion about a negative verdict purely hypothetical.

### III. Conspiracy Conviction—Information and Jury Instruction

¶27 Pineda-Pineda argues that two errors require this court to vacate his conviction for conspiracy to deliver a controlled substance, count IV. First, he argues the information did not allege the "substantial step" element. Second, he argues the to-convict instruction omitted the "substantial step" requirement. The State replies that, although the "substantial step" is required under the conspiracy statute, RCW 9A.28.040, the State must charge drug conspiracies under RCW 69.50.407, the Uniform Controlled Substances Act, which does not require a "substantial step."

¶28 RCW 69.50.407 provides that "[a]ny person who attempts or conspires to commit any offense defined in this chapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy." Chapter 69.50 RCW provides no definition of either "attempt" or "conspiracy." The State argues that because RCW 69.50.407 requires neither an overt act nor a substantial step, the information and the jury instruction did not need to include it. The State relies on *State v. Casarez-Gastelum*, 48 Wn. App. 112, 738 P.2d 303 (1987), and *State v. Hawthorne*, 48 Wn. App. 23, 737 P.2d 717 (1987), to undergird its position.

¶29 In *Hawthorne*, we correctly noted that a conspiracy charged under RCW 9A.28.040 requires the element of a substantial step. 48 Wn. App. at 26. However, because neither an overt act nor a substantial step was mentioned in RCW 69.50.407, we concluded the trial court had erred by requiring the State to specify an overt act it believed was in furtherance of the defendants' conspiracy. *Id.* at 27.

¶30 In *Casarez-Gastelum*, in the context of a sufficiency of the evidence challenge, Division Three examined whether the State needed to prove the defendant had taken a substantial step toward commission of the crime. 48 Wn. App. at 117-18. The court, employing similar reasoning as in

*Hawthorne*, concluded that the State did not need to prove a substantial step at all, because "RCW 69.50.407 does not contain a provision which refers to 'substantial step', nor has the defendant provided any law which shows a connection between the two conspiracy statutes." *Id.* at 118.

¶31 To refute the State's argument, Pineda-Pineda cites *State v. Lynn*, 67 Wn. App. 339, 349, 835 P.2d 251 (1992), where this court considered whether the impossibility defense applied to attempt charged under RCW 69.50.407. In *Lynn* we looked to RCW 69.50.407 and stated that, although the statute did not explicitly negate an impossibility defense, "absence of such language is without significance." 67 Wn. App. at 349. We then noted the Washington Criminal Code expressly says its definitions apply to offenses both in Title 9A RCW and other general statutes. *Id.* RCW 9A.04.010(2) provides, "The provisions of this title shall apply to any offense committed on or after July 1, 1976, which is defined in this title or the general statutes, unless otherwise expressly provided or unless the context otherwise requires, and shall also apply to any defense to prosecution for such an offense." With this in mind, we concluded the general attempt statute, RCW 9A.28.020(2), is applicable to a controlled substance attempt, RCW 69.50.407, "since there is nothing to the contrary or inconsistent in the latter statute." *Lynn*, 67 Wn. App. at 349.

¶32 Pineda-Pineda also cites *State v. Pacheco*, 125 Wn.2d 150, 882 P.2d 183 (1994), for the proposition that the substantial step element of RCW 9A.28.040 must be considered as incorporated into RCW 69.50.407. There, the court examined whether Pacheco's agreement with a police informant to deliver a controlled substance was sufficient under the common law approach to conspiracy as an actual agreement to commit a crime. *Id.* at 153. The court, in a footnote, citing to *Lynn*, stated its analysis of the criminal code's requirement for conspiracy charged under RCW 9A.28.040 was applicable to conspiracy charged under RCW 69.50.407:

We note at the outset Pacheco was convicted of conspiracy to deliver a controlled substance pursuant to RCW 69.50.407, not the general conspiracy statute, RCW 9A.28.040. The State has not suggested or presented any argument that the requisite conspiracy under RCW 69.50.407 is contrary to or inconsistent with the agreement required under RCW 9A.28.040. Thus, our construction of the conspiratorial agreement element in RCW 9A.28.040 is applicable to RCW 69.50.407.

125 Wn.2d at 153 n.1 (citation omitted) (citing *Lynn*, 67 Wn. App. at 349).

■ ¶33 We hold the crime of controlled substance conspiracy is concomitant with conspiracy as defined in RCW 9A.28.020. There is nothing contrary or inconsistent between the controlled substance conspiracy and the Washington Criminal Code definition of "conspiracy." To the extent this holding is inconsistent with *Hawthorne* and *Casarez-Gastelum*, we rely on our holding in *Lynn* and note that in both *Hawthorne* and *Casarez-Gastelum* RCW 9A.04.010 was not considered.

■ ¶34 We therefore examine the sufficiency of the information and the constitutional adequacy of the jury instruction on conspiracy. Both errors may be raised for the first time on appeal. RAP 2.5(a)(3); *State v. Kjorsvik*, 117 Wn.2d 93, 102-03, 812 P.2d 86 (1991) (a challenge to the constitutional sufficiency of a charging document may be raised initially on appeal); *State v. Stein*, 144 Wn.2d 236, 240-41, 27 P.3d 184 (2001) (If the instructions allow the jury to convict a defendant without finding an essential element of the crime charged, the State is relieved of its burden of proving all elements of the crimes charged beyond a reasonable doubt, and thus the error affects a defendant's constitutional right to a fair trial); *see also State v. O'Hara*, 167 Wn.2d 91, 105, 217 P.3d 756 (2009); *State v. Johnson*, 100 Wn.2d 607, 623, 674 P.2d 145 (1983), *overruled on other grounds by State v. Bergeron*, 105 Wn.2d 1, 4, 711 P.2d 1000 (1985).

## A. Information

¶35 A charging document is constitutionally adequate only if all essential elements of a crime, statutory and nonstatutory, are included in the document so as to apprise the accused of the charges against him or her and to allow preparation of a defense. *State v. Vangerpen*, 125 Wn.2d 782, 787, 888 P.2d 1177 (1995). The court in *Kjorsvik* held that when the sufficiency of a charging document is first raised on appeal, it is more liberally construed in favor of validity than if raised before verdict. 117 Wn.2d at 104-05. When the issue is first raised on appeal, the test asks (1) do the necessary facts appear in any form, or by fair construction can they be found, in the charging document; and, if so, (2) can the defendant show that he or she was nonetheless actually prejudiced by the inartful language that caused a lack of notice? *Id.* at 105-06. The first prong of the test looks to the face of the charging document itself—there must be some language in the document giving at least some indication of the missing element. *Id.* at 106. If an essential element is completely omitted from the information, prejudice is presumed. *State v. McCarty*, 140 Wn.2d 420, 425, 998 P.2d 296 (2000).

¶36 Pineda-Pineda contends reversal is required, as the information failed to allege the substantial step element. The second amended information charged him, in count IV, with conspiracy to deliver a controlled substance—cocaine. The charge read: "On or about and between May 4, 2007 and June 21, 2007, in the County of Skagit, State of Washington, the above-named Defendant did knowingly and unlawfully conspire with at least one person other than the intended recipient to deliver a controlled substance, to-wit: Cocaine; contrary to Revised Code of Washington RCW 69.50.407, 69.50.401(1), and 69.50.401(2)(a)."

¶37 Pineda-Pineda is correct that the information does not articulate the substantial step requirement. However, taking into consideration the other related charges, the substantial step element was not completely

omitted. Under the test articulated in *Kjorsvik*, reversal is not warranted if there are facts, appearing in any form in the information, that constitute notice to the defendant. 117 Wn.2d at 104-05. The information also accused Pineda-Pineda of delivery of a controlled substance. The date range in count IV encompassed the May 9 delivery, which supports a reasonable inference that Pineda-Pineda took a substantial step in the conspiracy to deliver.[8] In this instance, the information passes muster.

B. Jury Instruction

¶38 As discussed above, the omission of an element from a jury instruction is an error of constitutional magnitude that Pineda-Pineda may raise for the first time on appeal. *State v. Smith*, 131 Wn.2d 258, 263, 930 P.2d 917 (1997) (the to-convict instruction must contain all of the elements of the crime, because it serves as the yardstick by which the jury measures the evidence to determine guilt or innocence). The to-convict instruction for conspiracy did not include the substantial step element.

¶39 However, the error must also be manifest. *O'Hara*, 167 Wn.2d at 99. " ' "Manifest" in RAP 2.5(a)(3) requires a showing of actual prejudice.' " *Id.* (quoting *State v. Kirkman*, 159 Wn.2d 918, 935, 155 P.3d 125 (2007)). To demonstrate actual prejudice, there must be a " 'plausible showing by the [appellant] that the asserted error had practical and identifiable consequences in the trial of the case.' " *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Kirkman*, 159 Wn.2d at 935). To ensure that the actual prejudice inquiry and the harmless error analysis are distinct, "the focus of the actual prejudice must

---

[8] The May 4 delivery could not be the basis for a conspiracy charge, as a controlled substance conspiracy requires an agreement between the defendant and another person besides the intended recipient. *McCarty*, 140 Wn.2d at 425-26 ("Conspiracy to deliver a controlled substance, unlike conspiracy in general, necessarily requires the involvement of at least three people because the crime of delivery itself necessarily involves two people. Thus a document charging conspiracy to deliver a controlled substance must allege that persons involved outside the act of delivery took part in the conspiracy agreement."). Pineda-Pineda and Hanson, the recipient, were the only two involved in the May 4 delivery.

be on whether the error is so obvious on the record that the error warrants appellate review." *Id.* at 99-100.

¶40 Here, the error is patently obvious on the record. Pineda-Pineda has made the required showing of actual prejudice by highlighting the difference between the instruction as given and contrasting it to the proper definition of "conspiracy" as defined in RCW 9A.28.040. The practical and identifiable consequences in the trial were, as Pineda-Pineda explains, that the jury was free to convict him of conspiracy without determining whether any of the coconspirators took a substantial step in pursuance of the conspiracy. He argues the State did not allege that the other crimes charged constituted that substantial step.

¶41 Finally, the manifest error affecting a constitutional right must also be subject to a harmless error analysis. *State v. Scott*, 110 Wn.2d 682, 688, 757 P.2d 492 (1988). A constitutional error is harmless only if the appellate court is convinced beyond a reasonable doubt that any reasonable jury would have reached the same result in the absence of the error. *State v. Brown*, 147 Wn.2d 330, 341, 58 P.3d 889 (2002); *State v. Guloy*, 104 Wn.2d 412, 425, 705 P.2d 1182 (1985). The constitutional error analysis—requiring the error to be both manifest and not harmless—ensures that criminal defendants may not obtain new trials whenever it is possible to identify a constitutional issue not raised below. *Scott*, 110 Wn.2d at 687-88.

¶42 An instructional error that omits an element of the offense is harmless if that element is supported by uncontroverted evidence. *Brown*, 147 Wn.2d at 341; *State v. L.B.*, 132 Wn. App. 948, 954, 135 P.3d 508 (2006). The evidence surrounding the delivery in count I is uncontroverted evidence of a substantial step, so any error was harmless.[9] Even if the substantial step element had

---

[9] The State may seek separate convictions for the conspiracy to deliver and the subsequent accomplishment of the delivery without violating double jeopardy. *Iannelli v. United States*, 420 U.S. 770, 777-78, 95 S. Ct. 1284, 43 L. Ed. 2d 616 (1975); *State v. Gocken*, 127 Wn.2d 95, 106-07, 896 P.2d 1267 (1995) (adopting the "same elements" test to determine whether a double jeopardy violation is present).

been included in the to-convict instruction, we have no doubt the jury would have reached the same result.

IV. Conspiracy and Accomplice Liability

¶43 Pineda-Pineda argues the prosecutor's closing argument, coupled with the improper conspiracy instruction, suggested to the jury that it could convict him of conspiracy based on accomplice liability. He also argues that Washington does not allow for conspiracy based on accomplice liability.

¶44 During closing argument, the prosecutor conflated accomplice liability and conspiratorial liability:

> The defendant was selling crack cocaine, it happened multiple times here, and Ms. Hanson also testified about her history of purchasing from the defendant [and from] the women, three of them together on occasion and different combinations of them together, and that they were acting together, conspiring together to traffic in narcotics. Conspiring together. They were acting in concert with each other. They engaged in agreements; they helped each other out; they aided and abetted each other.

¶45 Pineda-Pineda relies on *Stein* for the proposition that Washington does not allow for conspiracy based on accomplice liability, but neither party cites Washington authority explicitly on point,[10] and *Stein* does not support Pineda-Pineda's contention. In *Stein*, the Supreme Court explained that the conspiracy statute predicates liability on the accomplice liability statute. 144 Wn.2d at 248. The accomplice liability statute requires knowledge of the particular crime that will be committed. *Id.* The court then declined to adopt the *Pinkerton* doctrine. *Id.* (citing *Pinkerton v. United States*, 328 U.S. 640, 647, 66 S. Ct. 1180, 90 L. Ed. 1489 (1946)). It held that a defendant cannot

---

[10] In *United States v. Portac, Inc.*, 869 F.2d 1288, 1293 (9th Cir. 1989), the Ninth Circuit held that a person can aid and abet a conspiracy either by aiding in the formation of the conspiratorial agreement or by aiding in the commission of the crime that is the object of the conspiracy. *See also United States v. Lane*, 514 F.2d 22, 27 (9th Cir. 1975) (defendant guilty of aiding and abetting conspiracy where evidence sufficient to show "intent and design to assist the perpetrators of the crime").

be liable for crimes committed by coconspirators, other than those of which he had knowledge, regardless of whether the other substantive crimes committed by the coconspirators are foreseeable. *Id.* The court's holding does not necessarily mean that one cannot be an accomplice to conspiracy.

¶46 We decline to reach the issue of whether one can be an accomplice to conspiracy, as the facts here demonstrate Pineda-Pineda acted as a principal in the conspiracy on at least one occasion—May 9—during the charging period of May 4 through June 21. He and the two women arranged to sell drugs to Hanson, and the women delivered cocaine to her.

¶47 We vacate the sentence enhancement on the delivery conviction for count II and affirm the conspiracy to deliver conviction. We remand for correction of the sentence.

DWYER, A.C.J., and ELLINGTON, J., concur.