FILED
COURT OF APPEALS DIV 1
STATE OF WASHINGTON

2014 NOV 10 AM 9: 00



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | DIVISION ONE |
| Respondent, | |
| | No. 70099-5-I |
| | (consol. with No. 70697-7-I) |
| v. | |
| | UNPUBLISHED OPINION |
| AMALIA M. CASTILLO, a.k.a. AMALIA M. CERVANTES, | |
| Appellant. | FILED: November 10, 2014 |

DWYER, J. — Amalia Castillo was charged with and convicted of multiple felonies for her role in an armed kidnapping. After the jury in her first trial failed to reach a unanimous verdict with regard to one of the charges—conspiracy to commit murder in the first degree—she was subsequently retried and convicted. In this consolidated appeal from both judgments, she challenges (1) the constitutional adequacy of the charging document in her second trial, (2) the constitutional sufficiency of the evidence to support her conviction of unlawful possession of a firearm in the second degree in her first trial, and (3) the trial court's calculation of her offender score at sentencing. We find no error and, therefore, affirm.

I

On September 30, 2011, Francisco Mendoza-Gomez[1] told Castillo, who was in his employ,[2] to kill a man named Juan Zuozo-Moreno.[3] Mendoza-Gomez's directive to Castillo came after he discovered Zuozo-Moreno engaged in sexual relations with Mendoza-Gomez's sister-in-law at her SeaTac apartment.

Shortly thereafter, Castillo and a man named Agalega Pua—who was compensated by Mendoza-Gomez to assist Castillo—forced Zuozo-Moreno, at gunpoint, to enter a black Acura sport utility vehicle (SUV). Castillo then drove the SUV to Federal Way to pick up a man named Eric Tharp. Tharp suggested that Fort Lewis would be a suitable place to dispose of Zuozo-Moreno.

While still in Federal Way, however, the SUV began to experience mechanical difficulties. Capitalizing on the resultant distraction, Zuozo-Moreno was able to escape from the SUV and find temporary refuge in a gas station convenience store. However, Tharp and Pua followed Zuozo-Moreno into the store where they repeatedly beat and kicked him before fleeing from the scene in the SUV.

During the ensuing investigation, a King County detective stopped a Jeep Cherokee that was being driven by Tharp.[4] Castillo was seated in the front passenger seat and her infant child was seated directly behind her in the rear

---

[1] Mendoza-Gomez's nickname is "Chaparro."
[2] Castillo's duties ranged from running errands for Mendoza-Gomez to assisting him in selling drugs.
[3] Also known as Isais Lozano.
[4] Castillo testified that the Jeep belonged to Mendoza-Gomez. The State offered testimony that the Jeep belonged to someone named "Nicole." No evidence was presented that Castillo was the owner of the Jeep.

passenger seat. A man known to Castillo as "Status" was seated in the rear passenger seat behind Tharp.

Castillo and Tharp were arrested and a search of the vehicle was conducted. A .380 caliber pistol was recovered from the floorboard behind Castillo's seat. Another .380 caliber pistol was found between the driver's seat and the center console. Two rifles were found in the storage area in the rear of the Jeep. Additionally, a .45 caliber pistol was found in a laptop bag in the storage area in the rear of the Jeep. Although Castillo admitted that the laptop bag belonged to her, she testified that someone else had placed the pistol in her laptop bag and that she had no knowledge of the presence of any of the firearms that were found in the Jeep.

Castillo was searched incident to her arrest. Items and substances found either in her purse or on her person included cocaine, methamphetamine, $4,000 in cash, and a loaded .380 caliber pistol. However, the pistol did not have a firing pin.

Thereafter, Castillo was charged by third amended information with (1) conspiracy to commit murder in the first degree, with a firearm enhancement allegation, (2) kidnapping in the first degree, with a firearm enhancement allegation, (3) unlawful possession of a firearm in the second degree, and (4) violation of the Uniform Controlled Substances Act (VUCSA)—specifically, possession of methamphetamine with intent to deliver or manufacture. See, RCW 69.50.401(1), (2)(b).

After being tried alone, Castillo was found guilty by jury verdict of

kidnapping in the first degree, with a firearm enhancement; of unlawful possession of a firearm in the second degree; and, of the lesser charge of simple possession of methamphetamine. However, when the jury was unable to reach a unanimous verdict as to the conspiracy charge, the judge declared a mistrial as to that count.

At the sentencing hearing following her first trial, Castillo, when queried, agreed (through her counsel) that she had an offender score of four.

> THE COURT: All right. Thank you. And, Ms. Cruz, before I hear from you, do you agree that the offender score of 4 is accurate?
>
> MS. CRUZ: That is correct, Your Honor.
>
> THE COURT: All right. Thank you.
>
> MS. CRUZ: We do agree. . . . If you look at her priors, she has one prior with two counts, and those were indeed for prior VUCSAs.

Thereafter, Castillo was charged—this time along with Mendoza-Gomez— by fifth amended information. The fifth amended information included, in pertinent part, a charge of conspiracy to commit murder in the first degree that was identical to the conspiracy charge that was contained within the third amended information—the charging document in Castillo's first trial.

> I, Daniel T. Satterberg, Prosecuting Attorney for King County in the name and by the authority of the State of Washington, do accuse AMALIA M. CASTILLO AKA AMALIA M. CERVANTES and FRANCISCO MENDOZA-GOMEZ, and each of them, of the crime of **Conspiracy to Commit Murder in the First Degree**, a crime of the same or similar character as another crime charged herein, which crimes were part of a common scheme or plan and which crimes were so closely connected in respect to time, place and occasion that it would be difficult to separate proof of one charge from proof of the other, committed as follows:

That the defendants AMALIA M. CASTILLO AKA AMALIA M. CERVANTES and FRANCISCO MENDOZA-GOMEZ, and each of them, together with others, in King County, Washington, on or about September 30, 2011, with intent that conduct constituting the crime of Murder in the First Degree of Isais Lozano aka Juan Zuozo-Moreno, to-wit: with premeditated intent to cause the death of Isais Lozano aka Juan Zuozo-Moreno, be performed, agreed with to engage in or cause the performance of such conduct, and the defendant or took a substantial step in the pursuance of such agreement.

On April 26, 2013, Castillo was found guilty by jury verdict of conspiracy to commit murder in the first degree while armed with a firearm.

At the sentencing hearing following her retrial, Castillo, through her counsel, did not repudiate her prior assent when she was asked whether she agreed that her offender score was four.

> THE COURT: . . . As I've said, I think that brings the Offender's Score to a 4 for Ms. Cervantes, and I think if you do the calculations with the Conspiracy for Murder I and multiply it by .75, I think it gets us to a standard range of 211.5 to 280.5 months prior to the application of the firearms enhancements. So I'll just ask counsel to look over those numbers and make sure they're correct.
>
> MS. CRUZ: I was getting 210.75, Your Honor, so you rounded up—you had 211 and a half.
>
> THE COURT: I had 211.5. So I have the standard range at an Offender's Score of 4 on a Murder I at 282 to 374.
>
> MS. CRUZ: Okay.

Thereafter, the trial court imposed a standard-range sentence based on Castillo's offender score of four.

Castillo appealed from the felony judgment and sentence entered following her first trial and the felony judgment and sentence entered following her second trial. The cause numbers corresponding to her two appeals were

- 5 -

then consolidated into a single appeal, which we resolve herein.

II

Castillo contends—for the first time on appeal—that the fifth amended information omitted essential elements of the charged crime of conspiracy to commit murder in the first degree. Absent from the charging document, she avers, were the following two elements of criminal conspiracy: (1) that she agreed with one or more persons to commit a crime, and (2) that any one of those who were in accord took a "substantial step" toward the completion of the agreement. We disagree.

"A person is guilty of criminal conspiracy when, with intent that conduct constituting a crime be performed, he or she agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them takes a substantial step in pursuance of such agreement." RCW 9A.28.040(1).

Given the nature of Castillo's challenge, we must determine whether any of the essential elements of the aforementioned statutory provision were omitted from the fifth amended information.

Familiar principles direct our analysis. In a criminal prosecution, the accused has a constitutional right to be informed of the charge she is to meet at trial. State v. Pelkey, 109 Wn.2d 484, 487, 745 P.2d 854 (1987). For that reason, the charging document must include all essential elements of a crime in order to apprise the accused of the charges and facilitate the preparation of a defense. State v. Pineda-Pineda, 154 Wn. App. 653, 670, 226 P.3d 164 (2010). However, in order to discourage defendants from the practice of waiting until

- 6 -

after verdict to challenge the constitutional adequacy of a charging document, our Supreme Court has adopted a standard of review—applicable to postverdict challenges—that provides us with "considerable leeway to imply the necessary allegations from the language of the charging document." State v. Kjorsvik, 117 Wn.2d 93, 102-06, 812 P.2d 86 (1991). Consequently, when analyzing a posttrial challenge, a charging document will be found constitutionally adequate so long as there is "some language in the document giving at least some indication of the missing element." Pineda-Pineda, 154 Wn. App. at 670.

When a challenge to the information is made for the first time on appeal, the following two-part test is used in determining whether the information passes constitutional muster: "(1) do the necessary facts appear in any form, or by fair construction can they be found, in the charging document; and, if so, (2) can the defendant show that he or she was nonetheless actually prejudiced by the inartful language which caused a lack of notice?"[5] Kjorsvik, 117 Wn.2d at 103, 105-06.

Turning to the first element alleged by Castillo to be absent from the charging document, we conclude that the necessary facts may, indeed, be found in the charging document, meaning that she was provided with adequate notice as to the first challenged element. Taken together, the word "conspiracy" and the phrase "That the defendants . . . agreed with to engage in or cause the performance of such conduct"—both of which were included in the charging

---

[5] "If an essential element is completely omitted from the information, prejudice is presumed." Pineda-Pineda, 154 Wn. App. at 670.

document—provided ample notice to Castillo that the State would attempt to prove that she agreed with one or more persons to cause Zuozo-Moreno's death. See State v. Morgan, 163 Wn. App. 341, 347, 261 P.3d 167 (2011) ("'[T]he term "conspiracy" implies the involvement of two or more people.'" (quoting State v. McCarty, 140 Wn.2d 420, 427, 998 P.2d 296 (2000))), review denied, 175 Wn.2d 1013 (2012).[6] Thus, notwithstanding a charging document that, as the State concedes, was "somewhat poorly drafted," it was nonetheless adequate to apprise Castillo of the crime with which she was charged; more specifically, it provided satisfactory notice that the charge involved agreeing with one or more persons to engage in conduct constituting a crime—namely, the killing of another human being.

As to the second element alleged by Castillo to be absent from the charging document, we again conclude that the necessary facts may be found in the charging document, which provided her with adequate notice as to the second challenged element. We have previously held—and do so again here— that a failure to articulate the "substantial step" requirement does not warrant reversal where there are sufficient facts in the information to constitute adequate notice to the defendant. See Pineda-Pineda, 154 Wn. App. at 670-71. In Pineda-Pineda, the defendant was charged both with delivery of a controlled substance and with conspiracy to deliver a controlled substance. 154 Wn. App.

_____

[6] In arguing that the information omitted the essential element of agreement with one or more persons, Castillo alludes to the fact that the information does not make use of the statutory language of RCW 9A.28.040(1). However, "[t]he information need not set forth the exact statutory language defining the crime." Morgan, 163 Wn. App. at 347 (citing Kjorsvik, 117 Wn.2d at 108).

at 671. However, the information did not "articulate the substantial step requirement." Pineda-Pineda, 154 Wn. App. at 670. Nevertheless, we considered the other related charges and held that the defendant was provided with adequate notice vis-à-vis the substantial step requirement because the date range of the conspiracy charge "encompassed" the date of delivery that was specified in the delivery charge, "which support[ed] a reasonable inference that Pineda-Pineda took a substantial step in the conspiracy to deliver." Pineda-Pineda, 154 Wn. App. at 671.

While the particular facts here differ from the facts in Pineda-Pineda, they do not lead to a conclusion that is at variance with our decision in that case. Here, the fifth amended information named two defendants and alleged that "the defendant or [sic] took a substantial step in the pursuance of such agreement." Unquestionably, this language is unartful; yet, two defendants were named in the charging document and it was alleged that the "*defendant*" took a "substantial step." Given that Castillo was one of two named defendants, the facts contained within the fifth amended information provided adequate notice that she could be found guilty of the crime with which she and her co-defendant had been charged if it was found that either one of them had taken a "substantial step" toward the completion of the agreement.

Moreover, because the second part of the two-part test permits us to "look beyond the face of the charging document to determine if the accused actually received notice of the charges he or she must have been prepared to defend

against,"[7] we may examine the trial court record to assess whether Castillo was actually prejudiced. Kjorsvik, 117 Wn.2d at 106. The procedural history is telling. Because Castillo was twice charged with conspiracy to commit murder in the first degree, she had, by the time of the second trial, been apprised of the State's theory of the case and the manner in which it intended to establish her culpability. Given Castillo's acquaintance with the State's theory of the case during her first trial, we decline to conclude that Castillo failed to receive actual notice of the essential elements of the conspiracy charge prior to the second trial.

Our liberal construction of the fifth amended information reveals that, although it left something to be desired, it was not constitutionally inadequate. Moreover, the procedural history of this case discloses that Castillo was not, in actuality, prejudiced by the unartful language contained within the charging document. Therefore, we decline Castillo's request to reverse her conviction and to dismiss the charge without prejudice and, instead, affirm her conviction of conspiracy to commit murder in the first degree.

III

Castillo next contends that, with regard to her conviction of unlawful possession of a firearm in the second degree, the State failed to carry its burden of proof. The evidence adduced by the State was constitutionally insufficient, she asserts, because it failed to show either that (1) the handgun found in her purse was operational, or that (2) she had possession or control over any of the

---

[7] We note that the second part of this test may only be reached in the event that the first part is satisfied, which is the case here.

other guns found in the Jeep.

The State does not attempt to refute Castillo's first assertion. Instead, it "recognizes that there was scant evidence presented to the jury regarding the steps that would need to be taken to make this pistol functional as a firearm," and that, "[i]n his closing argument, the deputy prosecutor deemphasized the gun found in Castillo's purse, observing that it was not immediately operational." In recognition of the State's apparent concession, we turn our attention to Castillo's second assertion.

When reviewing a challenge to the sufficiency of the evidence, we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). All reasonable inferences are drawn in favor of the verdict and interpreted most strongly against the defendant. State v. Gentry, 125 Wn.2d 570, 597, 888 P.2d 1105 (1995).

As charged, the State was required to prove beyond a reasonable doubt that, on the day that she was arrested, Castillo "knowingly had a firearm in her possession or control." See RCW 9.41.040(2)(a)(i).

"Possession of property may be either actual or constructive." State v. Callahan, 77 Wn.2d 27, 29, 459 P.2d 400 (1969). Constructive possession is established when the person charged with possession of contraband has dominion and control over either the contraband or the premises upon which the contraband was found. State v. Mathews, 4 Wn. App. 653, 656, 484 P.2d 942

(1971); see also State v. Potts, 1 Wn. App. 614, 617, 464 P.2d 742 (1969) (an automobile may be considered a premises). "Courts have found sufficient evidence of constructive possession, and dominion and control, in cases in which the defendant was either the owner of the premises or the driver/owner of the vehicle where contraband was found." State v. Chouinard, 169 Wn. App. 895, 899-900, 282 P.3d 117 (2012), review denied, 176 Wn.2d 1003, 297 P.3d 67 (2013). However, it is not necessary—in order to adequately support a finding of constructive possession—that the defendant be either the owner or the operator of the vehicle. Rather, it is well-settled that the proximity of a passenger in a vehicle to contraband, "coupled with the other circumstances linking" the passenger to the contraband, may constitute sufficient evidence to support a jury's finding that the passenger constructively possessed the contraband. See, e.g., Mathews, 4 Wn. App. at 658.

A straightforward application of this well-settled rule disposes of this issue. There is no dispute that Castillo was in close proximity to all of the guns that were located in the Jeep. Moreover, the State adduced evidence that a .45 caliber pistol was discovered in Castillo's laptop bag. This evidence provides the requisite circumstances linking Castillo to one of the guns.[8] While Castillo was neither the owner nor the operator of the Jeep in which the guns were found, she was—admittedly—the owner of the laptop bag in which one of the guns was found. Therefore, notwithstanding her testimony that she was not responsible for

_____

[8] In order to adequately support Castillo's conviction, the State needed only to adduce evidence that she possessed one or more of the guns found in the Jeep.

- 12 -

the presence of the .45 caliber pistol in her bag and that she did not know that it had been placed there—testimony that the jury was not required to credit[9]—the presence of the gun in her bag, coupled with her propinquity to it, constituted sufficient evidence to support a finding that she constructively possessed the gun.

VI

Castillo next contends that the trial court erred in imposing a sentence that was calculated using an offender score of four. This is so, she asserts, because (1) the State did not carry its burden of proving the facts necessary to determine whether two alleged prior VUCSA convictions should be included in calculating her offender score, and (2) the trial court did not independently determine whether the two alleged prior convictions constituted the same criminal conduct. Rather than addressing the merits of her contention, the State argues that Castillo, by affirmatively acknowledging that the offender score calculated by the trial court was correct, waived her ability to bring this challenge on appeal. We agree with the State.

As a general matter, "[i]llegal or erroneous sentences . . . may be challenged for the first time on appeal." State v. Nitsch, 100 Wn. App. 512, 519, 997 P.2d 1000 (2000). However, where an alleged sentencing error "involves an agreement to facts, later disputed, or where the alleged error involves a matter of trial court discretion," the error may not be raised for the first time on appeal. In

---

[9] See, e.g., State v. Bencivenga, 137 Wn.2d 703, 709, 974 P.2d 832 (1999) ("[T]he finder of fact is the sole and exclusive judge of . . . the credibility of witnesses.").

re Pers. Restraint of Goodwin, 146 Wn.2d 861, 874, 50 P.3d 618 (2002); State v. Wilson, 170 Wn.2d 682, 689, 244 P.3d 950 (2010). Because "[a]pplication of the same criminal conduct statute involves both factual determinations and the exercise of discretion," a defendant's affirmative acknowledgement in the trial court that her offender score was properly calculated prevents her from arguing for the first time on appeal that particular convictions, which were counted in the calculation of that score, amount to the same criminal conduct. Nitsch, 100 Wn. App. at 518-26; see also In re Pers. Restraint of Shale, 160 Wn.2d 489, 494-96, 158 P.3d 588 (2007) (adopting our reasoning in Nitsch and holding that waiver may apply where a defendant argues for the first time on appeal that two prior convictions constituted the same criminal conduct), overruling on other grounds recognized by In re Newlun, 158 Wn. App. 28, 34, 240 P.3d 795 (2010).

Both parties agree (and the record confirms) that Castillo, through her counsel, agreed that her offender score was four. Therefore, Castillo, by affirmatively acknowledging her offender score in the trial court, waived—insofar as she asserts that her two alleged prior convictions amounted to the same criminal conduct—her opportunity to challenge her offender score on appeal.[10]

---

[10] It is the defendant's burden to establish that two crimes constitute the same criminal conduct. State v. Aldana Graciano, 176 Wn.2d 531, 540, 295 P.3d 219 (2013). Thus, by failing to raise this issue in the trial court, Castillo—in addition to waiving her ability to challenge her offender score on appeal—failed to meet her burden of proof in the trial court.

Affirmed.

We concur: