# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 70360-9-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| JOSEPH WAYLON WEBB, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: August 26, 2013 |

SPEARMAN, A.C.J. — Joseph Webb was convicted of residential burglary and theft in the third degree. On appeal, he claims (1) insufficient evidence supports his convictions, (2) the aggravating factor was improperly applied based on his having been an accomplice to the burglary, and (3) he received ineffective assistance of counsel because counsel effectively conceded his guilt on the theft charge. In a Statement of Additional Grounds, he also claims (1) his sentence violated his constitutional rights to equal protection and (2) he received ineffective assistance because counsel did not request a lesser included instruction for criminal trespass in the first degree. Concluding that none of his claims have merit, we affirm.

## FACTS

In the morning of July 26, 2011, M.K. and her younger sister C.K.[1] were home at the Kissinger residence in Kelso, Washington. 2RP 132.[2] Their parents were at work. Around 8:30 a.m., M.K. heard the doorbell ring approximately thirty times. As M.K. approached the top of the stairs to see who was at the door, she heard "loud pounding, and the door hinge trying to click open." 2 Report of Proceedings (RP) at 135. From where she stood, she could see through a window the small area at the front door. She saw a male dressed in white standing there.

Approximately ten minutes later, M.K. recognized the sound of the motor of her family's dirt bike starting up. The dirt bike was kept in the basement of the house. She looked out a window and saw a man who was wearing black riding the dirt bike down the hill. The man on the dirt bike was not the same person she had seen at the front door. M.K. called 911. M.K. saw the man she had seen at the front door also traveling down the hill.

C.K. also heard the doorbell ring and heard the pounding on the door. She moved closer to the door and saw the door handle move. C.K. saw through the window next to the front door, a clean-shaven male wearing a baseball hat and a black shirt. A few minutes later, C.K. looked out the window that faced her backyard. She saw the same male who had been at the front door running away from her house and down the hill. He was wearing a backpack with the family's

---

[1] M.K. was 14 years old at the time of trial in November 2011 and C.K. was 11 years old. Due to their minority, we refrain from using their first names.

[2] 1RP - August 10, September 23, September 28, September 29, October 6, 2011, hearings; October 10, 2011, first trial; October 12, October 19, November 3, November 9, 2011, hearings; 2RP - November 10, 2011, November 16, 2011, jury trial; 3RP - November 17, 2011, jury trial; December 1, 2011, hearing; December 5, 2011, sentencing; December 7, 2011, hearing.

2

orange hedge trimmer sticking out of it. C.K. then heard the sound of her family's dirt bike starting in the basement. She saw another male, not the one at the front door, driving through the yard on the dirt bike. This man was wearing white and had a mustache. C.K. testified that after losing sight of both individuals briefly, she later saw both of them riding away on the dirt bike.

In response to M.K.'s 911 call, Detective Ken Hochhalter was dispatched to the residence. While en route, he observed a motorcycle with a single person on it fleeing from the general area of the burglary. When he attempted to cut off the motorcycle, Hochhalter also observed another person carrying a backpack and running down an embankment. After police officers apprehended the person on the motorcycle, later identified as Lester Simmons, they began searching for the other suspect. Soon Officer Brian Clark spotted a male wearing a backpack with a red or orange item sticking out of it. Clark momentarily lost sight of the suspect; however, when Clark next saw him, he was no longer wearing the backpack. Officer Mark Berglund also spotted the suspect when he was wearing the backpack with the orange item sticking out of it. Hochhalter soon apprehended the suspect, later identified as Webb, in an alleyway. Webb was questioned after being handcuffed and administered his constitutional warnings. He denied knowledge of the incident.

Officer Dave Shelton spoke with Simmons. Simmons admitted to burglarizing the Kissinger home and told police that Webb participated. M.K. and C.K. were brought to where Simmons and Webb were being held. M.K. identified

Webb as the person she had seen at the front door. C.K. identified Simmons as the person who drove her family's dirt bike through the yard.

A neighbor of the Kissinger family found a backpack at approximately 10:30 the same day and turned it over to the police. The backpack was identified as the one police had seen Webb carry as he fled. The backpack contained a hedge trimmer. In addition, the backpack contained a Craftsman socket wrench set with "Kissinger" engraved on the case and a 3/8 drill motor. Brett Kissinger, the father of M.K. and C.K., identified the dirt bike, socket set, hedge trimmer, and drill as belonging to him. The backpack also contained a prescription pill bottle with "Joseph W. Webb" on the label and a social security card with the name "Erma Webb." 2RP at 242-43.

Simmons pleaded guilty to residential burglary and taking a motor vehicle without the owner's permission. Webb was charged with residential burglary, taking a motor vehicle without permission in the second degree, and theft in the third degree. In an amended information, the State alleged that Webb committed residential burglary while "the victim of the burglary was present in the building or residence when the crime was committed[.]" RCW 9.94A.535(3)(u); Clerk's Papers (CP) at 4-6.

A jury trial began on November 9, 2011. Simmons testified on behalf of the defense. He testified that he and Webb were looking for odd jobs such as yard work and went to several houses, including the Kissingers'. Simmons said he was a drug addict and needed money to support his habit. He testified that he was wearing all black clothing while Webb wore a white shirt. Simmons knocked on

4

the front door of the Kissingers' house several times and rang the doorbell while Webb stood five to ten feet behind him. When no one answered the door, Simmons went around to the back of the house. Simmons decided to break into the house to make money to buy drugs. He testified that he did not tell Webb what he was going to do. At the back of the house, he opened an unlocked door under the porch that led into a storage area. He turned around and saw Webb standing behind him. Simmons asked Webb for Webb's backpack. Webb gave it to him and then watched as Simmons went through the door into a storage area. While inside, Simmons filled the backpack with tools. He came out to give it to Webb, but Webb was gone. Simmons testified that Webb never entered the storage area. Simmons went back inside the storage area and got a dirt bike, started it, and rode down the hill away from the house with the backpack between his legs. He passed Webb, who was running down the hill, handed the backpack to him, and told him to meet Simmons at a friend's house. The hedge trimmer was sticking out of the backpack when Simmons handed it to Webb.

Defense counsel did not object to any of the jury instructions, nor did he offer any that the court refused to give. During closing argument, defense counsel stated:

> When I got up here and I talked to you in the beginning of the case, I told you that, quite frankly, I expected that the evidence with respect to the Theft in the Third Degree was going to be pretty strong, and it was, it turned out there.
>
> . . .
>
> Mr. Webb did have control over the backpack that contained the property belonging to Mr. Kissinger. That's exerting unauthorized control over that property.

5

> So you know, quite frankly, the evidence is quite strong on that, we're not disputing that. The point when you look at all of the issues in the case is that, as Instruction Number 6 tells you, your verdict—your decision on that count doesn't control the decisions that you have to make with respect to the other two counts because there are issues with respect to whether the State has proven beyond a reasonable doubt all of the elements of the Taking of a Motor Vehicle and the Residential Burglary.

3RP at 317.

The jury found Webb guilty of residential burglary and theft in the third degree and acquitted him of taking a motor vehicle without permission. The jury returned a special verdict finding that the victims of the burglary were present in the building when the crime was committed. Webb stipulated that his offender score was "7" with a standard range of 43 to 57 months on the burglary. The court imposed an exceptional sentence of 81 months based on the jury's finding of an aggravating factor (24 months was imposed for the enhancement). Webb appeals.

## DISCUSSION

### Sufficiency of the Evidence

On a challenge to the sufficiency of the evidence, this court reviews the evidence in the light most favorable to the State to determine whether any rational trier of fact could have found guilt beyond a reasonable doubt. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). A claim of insufficiency admits the truth of the State's evidence and all inferences that can reasonably be drawn therefrom. Id. Circumstantial and direct evidence are of equal weight. State v. Goodman, 150 Wn.2d 774, 781, 83 P.3d 410 (2004). A reviewing court defers to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the

6

persuasiveness of the evidence. State v. Walton, 64 Wn. App. 410, 415-16, 824 P.2d 533 (1992).

Webb was charged with residential burglary and theft in the third degree. "A person is guilty of residential burglary if, with intent to commit a crime against a person or property therein, the person enters or remains unlawfully in a dwelling other than a vehicle." RCW 9A.52.025. "A person is guilty of theft in the third degree if he or she commits theft of property or services which . . . does not exceed seven hundred fifty dollars in value . . . ." RCW 9A.56.050(1)(a). Theft is defined as, "To wrongfully obtain or exert unauthorized control over the property or services of another or the value thereof, with intent to deprive him or her of such property or services[.]" RCW 9A.56.020(1)(a).

The jury was given accomplice liability instructions.[3] An accomplice and a principal share the same criminal liability. State v. Carter, 154 Wn.2d 71, 78, 109 P. 3d 823 (2005) (quoting State v. Graham, 68 Wn. App. 878, 881, 846 P. 2d 578 (1993), abrogated on other grounds by State v. Silva-Baltazar, 125 Wn.2d 472, 886 P.2d 138 (1994)). A person is an accomplice if, "[w]ith knowledge that it will promote or facilitate the commission of the crime, he or she (i) [s]olicits, commands, encourages, or requests such other person to commit it; or (ii) [a]ids or agrees to aid such other person in planning or committing it." RCW 9A.08.020(3)(a). "'Aiding' in a crime includes 'all assistance whether given by words, acts, encouragement, support, or presence. A person who is present at the

---

[3] While the State did not file an amended information charging Webb as an accomplice, he concedes that an individual can be charged as a principal but convicted as an accomplice provided that the trial court gives an accomplice liability instruction. See State v. Davenport, 100 Wn.2d 757, 764-65, 675 P.2d 1213 (1984).

scene and ready to assist by his . . . presence is aiding in the commission of the crime.'" State v. B.J.S., 140 Wn. App. 91, 98, 169 P.3d 34 (2007) (quoting State v. Dove, 52 Wn. App. 81, 87, 757 P.2d 990 (1988)). A defendant's mere presence at the scene of a crime, however, even if coupled with knowledge of another's criminal conduct, is not sufficient to prove complicity. State v. Luna, 71 Wn. App. 755, 759, 862 P. 2d 620 (1993).

Webb contends the evidence was insufficient to convict him of residential burglary and theft in the third degree as an accomplice to Simmons because the evidence showed only that he was present outside the victims' house when Simmons began to commit the burglary and that Simmons asked for his backpack. Webb points to Simmons' testimony that he did not tell Webb he was going to enter the basement or take items; that Webb was gone by the time he emerged from the basement; and that he did not see Webb again until he rode by on the dirt bike and handed him the backpack.

We disagree. As to the theft in the third degree, the evidence was sufficient to support Webb's conviction as a principal. He was seen running away from the Kissinger house and through the surrounding neighborhood while carrying a backpack with the hedge trimmer sticking out of it. He attempted to get rid of the backpack while police were searching for him. The backpack was later found to contain several additional items taken from the Kissinger home, as well as a pill bottle with Webb's name on it. The evidence was sufficient to show he wrongfully exerted unauthorized control over the Kissingers' property, with intent to deprive them of such property.

8

As to the burglary charge, the evidence was sufficient to support Webb's conviction as an accomplice to Simmons because it showed that Webb was present, was ready to assist, and did assist in the commission of the burglary. Webb was observed by two witnesses, M.K. and C.K., trying to get inside the house through the front door. Both testified that the person at the front door was not the same person who rode the dirt bike, and M.K. identified Webb as the person they had seen at the front door while C.K. identified Simmons as the person who rode away on the dirt bike.[4] Then, seeing that Simmons was about to enter the Kissingers' house, Webb gave his backpack to Simmons. He took it back after it was loaded with stolen items, including a hedge trimmer that was visibly sticking out of the bag. Multiple witnesses saw him carrying the backpack. Notwithstanding Simmons' testimony that he did not tell Webb of his plans to take items from the residence, other evidence permitted the jury to find that Webb knew Simmons would enter the residence with the intent to commit a crime and that Webb knowingly aided Simmons in doing so.

## Aggravating Factor

The jury found that the victim of the burglary was in the dwelling at the time the crime was committed, which is an aggravating factor under RCW

---

[4] Reconciling the sisters' inconsistent physical descriptions of the person they saw at the front door is a matter we leave to the jury. Walton, 64 Wn. App. at 415-16.

9

9.94A.535(3)(u).[5] Because the statute does not contain any specific authority to impose the sentence enhancement based upon accomplice liability for the underlying crime, Webb's "own acts must form the basis for the enhancement." State v. Pineda-Pineda, 154 Wn. App. 653, 664, 226 P.3d 164 (2010).

Relying principally on Pineda-Pineda, Webb contends his liability for the aggravating factor is improper because it is premised solely on his accomplice liability for the underlying burglary conviction. He argues that because "there was no jury finding that Mr. Webb himself engaged in actions supporting [the] aggravating factor of being inside the residence at the time of the commission of the crime," the exceptional sentence cannot be imposed on him. Brief of Appellant at 17. Webb is incorrect.

Pineda-Pineda is easily distinguishable. In that case, the issue on appeal was whether Pineda-Pineda, having been found guilty as an accomplice to delivery of a controlled substance, could be subject to a sentence enhancement based on the crime taking place within one thousand feet of a school bus route stop. Pineda-Pineda, 154 Wn. App. at 657-59. The evidence showed only that Pineda-Pineda arranged for the transaction to occur. Id. at 658. The actual delivery took place between an informant and two women Pineda-Pineda had

---

[5] The statute provides:

Except for circumstances listed in subsection (2) of this section, the following circumstances are an exclusive list of factors that can support a sentence above the standard range. Such facts should be determined by procedures specified in RCW 9.94A.537.

. . .

(u) The current offense is a burglary and the victim of the burglary was present in the building or residence when the crime was committed.

apparently sent on his behalf. Id. Thus, although the evidence established that Pineda-Pineda was an accomplice to the delivery, there was no evidence that he was physically present in the school zone when the delivery occurred. We also observed that there was no evidence that Pineda-Pineda selected the location of the transaction. Id. at 660. We concluded that, other than Pineda-Pineda's accomplice liability on the underlying crime, there was no other conduct upon which liability for the enhancement could be based. Id. at 664-65. Accordingly, we vacated that portion of the sentence. Id.

In this case, liability under the aggravating factor does not depend on any conduct by Webb, or the conduct of the principal, for that matter, other than participation in the burglary. It does not require, as Webb argues, evidence that he personally was inside the residence at the time of the commission of the crime. The statute only requires that the victim of the burglary be "present in the building or residence when the crime was committed." See RCW 9.94A.535(3)(u).

State v. McKim, 98 Wn.2d 111, 653 P.2d 1040 (1982), a case on which we relied in Pineda-Pineda, is instructive.[6] In that case, a drugstore pharmacist was robbed at gunpoint by a lone individual. McKim, 98 Wn.2d at 113. The robber fled the scene and ran to a waiting getaway car driven by McKim. Id. Both were charged with robbery in the first degree while armed with a deadly weapon. Id. The jury convicted McKim as charged and made a special finding that he was armed with a deadly weapon at the time of the offense. Id. At issue on appeal was

---

[6] We noted in Pineda-Pineda that while the legislature superseded the holding in McKim, by amending the firearm enhancement statute, McKim's explanation of the difference between liability for substantive crimes, as established by RCW 9A.08.020, and liability for sentencing enhancements is still valid. Pineda-Pineda, 154 Wn. App. at 663-64.

whether the deadly weapon enhancement could be applied to McKim, where he was not personally armed during the commission of the robbery. The court concluded that a deadly weapon enhancement could apply to a defendant who was not personally armed if there was a finding that the defendant knew a co-defendant was armed. Because there was no such finding as to McKim, the deadly weapon sentence enhancement could not be applied to him. Id. at 113. The court stated:

> One who knows an accomplice is armed can take the weapon and use it or can direct the accomplice in its use, whereas one without knowledge that the accomplice is armed presents neither danger. Since the purpose of the deadly weapon statute is to deter would-be criminals from carrying weapons which have the potential of inflicting death and injury, the statute should reach not only those who are armed, but also those who know an accomplice is armed.

Id. at 118.

Similarly, in this case, committing a burglary when victims are present in a building increases the potential that injury or death will occur during the commission of the crime. If such an event were to occur, an accomplice to the burglary would be no less liable for it than the principal. Thus, liability for the sentence enhancement should apply equally to both. In this case, it is undisputed that the victims of the burglary, to which Webb was an accomplice, were present in the residence at the time the crime was committed. The sentence enhancement was properly applied to him.

Ineffective Assistance of Counsel

Webb contends defense counsel's concession during closing argument that the State had "quite strong" evidence for the theft in the third degree,

12

effectively conceding his guilt, was ineffective assistance and violated his right to have the State prove each element beyond a reasonable doubt.

A claim of ineffective assistance involves mixed questions of law and fact that this court reviews de novo. In re Pers. Restraint of Brett, 142 Wn.2d 868, 873, 16 P.3d 601 (2001). To prevail on a claim of ineffective assistance, a defendant must meet both prongs of a two part test: (1) counsel's representation was deficient, meaning it fell below an objective standard of reasonableness based on consideration of all the circumstances, and (2) the defendant was prejudiced, meaning there is a reasonable probability that the result of the proceeding would have been different, but for counsel's performance. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). If the court decides either prong has not been met, it need not address the other prong. State v. Garcia, 57 Wn. App. 927, 932, 791 P.2d 244 (1990). Courts presume counsel's representation was effective. Strickland, 466 U.S. at 689; Thomas, 109 Wn.2d at 226. The presumption is rebutted if there is no possible tactical explanation for counsel's performance. State v. Reichenbach, 153 Wn.2d 126, 130, 101 P. 3d 80 (2004).

By entering a "not guilty" plea, a defendant preserves his right to a fair trial and his right to hold the State to its burden of proof. State v. Silva, 106 Wn. App. 586, 596, 24 P. 3d 477 (2001). But conceding guilt in closing argument on a particular count can be a sound trial tactic when the evidence on that count is overwhelming and when the count is a lesser count, so that there is an advantage to be gained by winning the confidence of the jury. Id. "An attorney need not

consult with the client before making such a tactical move." Id. (Citing Underwood v. Clark, 939 F.2d 473, 474 (9th Cir. 1991)).

Webb fails to show that counsel's performance was deficient. The evidence that Webb exerted unauthorized control over the Kissingers' property was overwhelming and it was reasonable for defense counsel to believe no juror doubted this. Webb was seen by multiple witnesses running away from the Kissingers' house and through the surrounding neighborhood while carrying the backpack that contained stolen property. The evidence was that the hedge trimmer visibly stuck out of the backpack and could not have been mistaken by Webb as having been inside the backpack before he took it back from Simmons. Though Webb at one point tried to ditch the backpack, it was found shortly thereafter. Inside the backpack were not only items stolen from the Kissingers but also items connecting the backpack with Webb.

Next, the count on which defense counsel conceded the evidence was strong was the lesser of the three counts. Theft in the third degree is a gross misdemeanor, while taking a motor vehicle without permission in the second degree is a class C felony and residential burglary is a class B felony. RCW 9A.56.050(2); RCW 9A.56.075(2); RCW 9A.52.025(2).

Webb argues that defense counsel's concession was inconsistent with the defense theory that he did not assist in the burglary and permitted the jury to conclude Webb's attorney believed he was guilty. We disagree. Defense counsel's statement did not negate his defense to the burglary charge. Counsel argued during closing that the three counts should be considered separately and

14

that the strong evidence on the theft charge should not control the jury's verdict on the other two counts. Counsel argued there was no evidence that Webb aided Simmons with the burglary, only speculation, and that the evidence showed only that Simmons later gave the backpack to Webb and that Webb exerted unauthorized control over the Kissingers' property at that point.

## Statement of Additional Grounds

In a statement of additional grounds, Webb argues that (1) his constitutional rights to equal protection were violated because he and Simmons received different sentences and (2) counsel was ineffective in failing to request a lesser included instruction on criminal trespass in the first degree.

Webb's equal protection claim is based on the fact that he and his co-defendant Simmons received different sentences. He relies on State v. Caffee, 117 Wn. App. 470, 68 P.3d 1078 (2002). Under the equal protection clauses of the fourteenth amendment to the United States Constitution and article I, section 12 of the Washington Constitution, persons similarly situated with respect to the legitimate purpose of the law must receive like treatment. Id. at 480. "Where codefendants have received different sentences, a court will exercise equal protection analysis only after a defendant 'can establish that he or she is similarly situated with another defendant by virtue of near identical participation in the same set of criminal circumstances[.]'" Id. (quoting State v. Handley, 115 Wn.2d 275, 290, 796 P.2d 1266 (1990)). Only if there is no rational basis for the differentiation among the various class members will a reviewing court find an equal protection violation. Id.

15

The court in Caffee observed that the case before it did not involve a situation where the codefendants were charged with and convicted of the same offense but nonetheless received different sentences. Id. at 480-81. Rather, in Caffee, defendant Stewart was convicted of murder in the second degree while defendant Musgrave was convicted of murder in the first degree. Id. at 481. The court went on to note that "even where codefendants are convicted of the same or similar crimes, a trial court is justified in imposing disparate sentences based on relative culpability, criminal record, rehabilitation potential, cooperation with law enforcement, and differences in pleas." Id. The court found a rational basis for the different treatment between Stewart and Musgrave that was not based solely on Musgrave's choice to exercise his right to trial. Id. at 481-82. Stewart pleaded guilty for a reduced sentence, agreeing to cooperate with police officers, while Musgrave was convicted by a jury of a higher crime.

Here, Simmons and Webb were both convicted of residential burglary, with similar participation in the same set of criminal circumstances. Simmons was additionally convicted of taking a motor vehicle without the owner's permission, while Webb was additionally convicted of theft in the third degree. According to Simmons' testimony, he received a sentence of 53 months for the residential burglary and 22 months for taking a motor vehicle. Based on Webb's offender score, his standard range on the burglary was 43 to 57 months.[7] It was based on the aggravating factor, however, that the court imposed an exceptional sentence of 81 months. Thus, in this case the rational basis for the difference between

---

[7] The theft in the third degree carried an applicable standard range of 0-365 days.

Simmons' and Webb's sentences was that Simmons pleaded guilty to the residential burglary and did not risk the imposition of an exceptional sentence based on the aggravating factor, while Webb did. We reject Webb's equal protection claim.

Next, Webb contends counsel was ineffective because he did not request lesser-included offense instructions for criminal trespass in the first degree. Strickland again applies. Under State v. Workman, 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978), a defendant is entitled to a lesser included instruction if (1) each of the elements of the lesser crime is an element of the greater crime (the "legal prong") and (2) the evidence supports an inference that the defendant committed the lesser crime (the "factual prong").

The legal prong is met here. First degree criminal trespass is a lesser included offense of residential burglary. State v. Pittman, 134 Wn. App. 376, 384, 166 P.3d 720 (2006) (citing State v. West, 18 Wn. App. 686, 691, 571 P.2d 237 (1977)), abrogated on other grounds by State v. Grier, 171 Wn.2d 17, 246 P.3d 1260 (2011).

However, the factual prong is not. To meet the factual prong, the defendant must show that "substantial evidence in the record supports a rational inference that the defendant committed only the lesser included . . . offense to the exclusion of the greater offense. . . ." State v. Fernandez-Medina, 141 Wn.2d 448, 461, 6 P.3d 1150 (2000). The evidence must do more than merely cast doubt on the State's theory regarding the charged offense; instead, the evidence must affirmatively establish the defendant's theory regarding the lesser offense. State v.

17

Fowler, 114 Wn.2d 59, 67, 785 P.2d 808 (1990), overruled on other grounds by State v. Blair, 117 Wn.2d 479, 816 P.2d 718 (1991). A person is guilty of residential burglary if, with intent to commit a crime against a person or property therein, the person enters or remains unlawfully in a dwelling other than a vehicle. RCW 9A.52.025. A person is guilty of criminal trespass in the first degree if he or she knowingly enters or remains unlawfully in a building. RCW 9A.52.070(1). The relevant distinction is that for residential burglary, the defendant must possess the intent to commit a crime against a person or property in a dwelling. Webb does not explain how the evidence supported the inference that he committed first degree criminal trespass to the exclusion of residential burglary, particularly given defense witness Simmons' testimony that Webb voluntarily gave his backpack to Simmons before Simmons went into the house. Webb fails to establish that a lesser included offense instruction was appropriate in this case and thus does not show either deficient performance or prejudice under Strickland.

Affirmed.

_Spearman, A.C.J._

WE CONCUR:

_Appelwick, J._

_Becker, J._