[No. 45730-6-I.   Division One.   December 17, 2001.]

*In the Matter of the Personal Restraint of* AARON HOWERTON, *Petitioner.*

*Sheryl G. McCloud*, for petitioner.

*James H. Krider, Prosecuting Attorney*, and *Seth Aaron Fine* and *David F. Thiele, Deputies*, for respondent.

COLEMAN, J. — Aaron Howerton was convicted of first degree aggravated murder in May 1995 and was sentenced to a term of life in prison. At trial, the State argued that Howerton was the principal actor in the murder and that he was aided by Timothy Barnes (AKA "T-Dog"). In response to conflicting evidence regarding the extent of Howerton's involvement, however, the State alternatively maintained his culpability as an accomplice. After finding Howerton guilty of first degree premeditated murder, the jury returned affirmative findings on two aggravating factors. While Howerton alleges several errors in this petition, most of his argument focuses on whether aggravating factors can be applied to enhance a defendant's sentence based on accomplice liability. For the reasons set forth below, Howerton's petition is denied.

## FACTS

On May 1, 1994, Wilder Eby was shot and killed and his car and other property were stolen. Eby's mother reported him missing when he did not return home the next day. Several days later, when the police discovered that Howerton had some of Eby's stereo equipment in his car, they began to suspect his involvement in Eby's disappearance. The police obtained a search warrant for Howerton's car and confronted him with their suspicions. Howerton told the police that Barnes had shot Eby. Howerton explained that he, Barnes, and Eby had driven to a remote area to smoke marijuana. He claimed that at one point he asked Eby (who was driving) to stop the car so that he could urinate. As Howerton was urinating on the side of the road,

he heard a gunshot and turned around to see Barnes standing over Eby's dead body with a gun in his hand. Howerton admitted that he proceeded to help Barnes burn Eby's body and his car. He also admitted taking some of Eby's stereo equipment and using Eby's bank card to withdraw cash on several occasions. Although Howerton maintained that he had no prior knowledge of Barnes's intent to kill Eby, he admitted hearing Barnes joking about it several days before the shooting. The State charged Howerton with aggravated first degree murder. The State alleged the existence of two aggravating factors: (1) that the murder was committed to conceal a crime or the identity of a person committing a crime and (2) that the murder was committed in the course of, in furtherance of, or in flight from robbery.

Barnes gave the police a different account of what happened. Barnes claimed that Howerton approached him and asked for his help in murdering and robbing Eby. After agreeing to help, Barnes said that he, Howerton, and Eby drove to a secluded area upon Howerton's suggestion. When Howerton asked Eby to stop the car so that he could urinate, the three men got out. It was at that point that Howerton shot Eby. Barnes pleaded guilty to first degree murder and agreed to testify against Howerton.

At trial, several witnesses testified that both Howerton and Barnes talked about killing and robbing Eby beforehand, and similarly, both claimed responsibility afterwards. The State argued that Howerton planned the murder/robbery, pulled the trigger, and took Eby's stereo. Because the witness testimony was conflicting, however, the State alternatively maintained Howerton's culpability as an accomplice.

The jury found Howerton guilty of first degree premeditated murder, and by special verdict found that both aggravating factors existed. Howerton was sentenced to life imprisonment without the possibility of release or parole. This court denied Howerton's appeal in January 1998, and he filed this petition in November 1999. We then postponed

oral argument and stayed this matter pending the Supreme Court's decision in *State v. Roberts*, 142 Wn.2d 471, 14 P.3d 713 (2000).

## DISCUSSION

### 1. Aggravating Factors

"A person is guilty of aggravated first degree murder if he or she commits murder as defined by RCW 9A.32-.030(1)(a) . . ."[1] and one or more statutory aggravating circumstances exists. RCW 10.95.020. After finding Howerton guilty of first degree murder, the jury completed a special verdict form as follows:

> We, the jury, having found the defendant guilty of murder in the first degree, make the following answers to the questions submitted by the court:
>
> QUESTION: Has the State proven the existence of the following aggravating circumstance beyond a reasonable doubt?
>
> The defendant or an accomplice committed the murder to conceal the commission of a crime or to protect or conceal the identity of any person committing a crime.
>
> ANSWER:      Yes    
> (Yes or No)
>
> QUESTION: Has the State proven the existence of the following aggravating circumstance beyond a reasonable doubt?
>
> The murder was committed in the course of, in furtherance of, or in the immediate flight from robbery.
>
> ANSWER:      Yes    
> (Yes or No)

Based on the jury's affirmative findings on these aggravating factors, Howerton was given a mandatory sentence of life imprisonment without the possibility of release or parole. *See* RCW 10.95.030(1).

---

[1] RCW 9A.32.030(1)(a) states that a person is guilty of murder in the first degree when "[w]ith a premeditated intent to cause the death of another person, he or she causes the death of such person or of a third person[.]"

Howerton argues that the special verdict form was fatally flawed because it allowed the jury to find him guilty of aggravated murder based solely on another person's conduct. The language pertaining to the first aggravating factor permitted the jury to return an affirmative finding if "[t]he defendant (Howerton) *or an accomplice* committed the murder[.]" (Emphasis added.) Howerton also asserts that because the second aggravating factor is worded entirely in the passive voice—with no indication of a specific actor—it allows for a similar result. While Howerton acknowledges that Washington law permits a defendant's conviction for first degree murder under an accomplice liability theory, *see* RCW 9A.08.020 and RCW 9A.32.030, he contends that "there is no accomplice statute allowing courts to impose *aggravating factors* upon one participant for the acts of another." Mem. in Supp. of Pers. Restraint Pet., at 23. Howerton argues that because the aggravating factors listed in RCW 10.95.020 are sentence enhancements and not elements of the crime, they should not be available to an accomplice liability analysis. *See State v. Irizarry*, 111 Wn.2d 591, 594, 763 P.2d 432 (1988).

█ Although there is no specific statutory authorization for the application of complicity principles to an aggravated murder charge, it is a possibility envisioned by the Legislature. The Legislature's intent is most apparent in RCW 10.95.070, which lists several factors to be considered in a special sentencing proceeding following an aggravated murder conviction. Under this section, it is a mitigating factor if "the defendant was an accomplice to a murder committed by another person where the defendant's participation in the murder was relatively minor[.]"[2] RCW 10.95.070(4). Accomplice liability is also specifically identified as the basis for one of the aggravating factors in the aggravated murder statute. *See* RCW 10.95.020(5) ("The person solicited another person to commit the murder and

---

[2] An implicit prerequisite for consideration of this mitigating factor is the defendant's conviction as an accomplice on an aggravated murder charge.

had paid or had agreed to pay money or any other thing of value for committing the murder[.]"). These sections demonstrate the Legislature's intent that the aggravating factors listed in RCW 10.95.020 apply to persons convicted as accomplices to first degree premeditated murder.

■■ This conclusion regarding the theoretical applicability of the aggravating factors to accomplices to premeditated murder, however, is but the first step in the analysis of this issue as it is presented in this case. The more difficult question is whether these aggravating factors can be attributed to a defendant solely on the basis of complicity. In other words, did the Legislature intend to hold accomplices to murder strictly liable for the existence of aggravating factors or must the State prove the applicability of the factors to the individual defendant?

Our Supreme Court addressed a similar issue in *State v. McKim*, 98 Wn.2d 111, 653 P.2d 1040 (1982) when it considered "whether the deadly weapon statute . . . can be applied to enhance the sentence of a defendant who was not personally armed during the commission of an offense." *McKim*, 98 Wn.2d at 112 (footnote omitted). In its analysis, the court noted that while under the old accomplice liability statute an accomplice could be held strictly liable for sentence enhancements, "[t]he new complicity statute . . . makes an accomplice equally liable only for the substantive crime—any sentence enhancement must depend on the accused's own misconduct."[3] *McKim*, 98 Wn.2d at 117. After concluding that the complicity statute did not provide a basis for a sentence enhancement, the court turned to the language of the enhancement itself. Because the weapon enhancement statute required a finding that the defendant was armed with a deadly weapon, the court

---

[3] The old complicity statute (RCW 9.01.030) stated, in part, that " ' "[e]very person concerned in the commission of a felony . . . whether he directly commits the act constituting the offense, or aids or abets in its commission, and whether present or absent . . . is a principle, and shall be proceeded against *and punished as such*." ' " *McKim*, 98 Wn.2d at 115-16 (quoting *State v. Willis*, 5 Wn. App. 441, 443, 487 P.2d 648 (1971)). This section was amended to its current form (RCW 9A.08.020) in 1976 and no longer provides for "punishment" of an accomplice to the same extent as the principle. *McKim*, 98 Wn.2d at 115-16.

held that it could be applied to an unarmed codefendant only if the State proved beyond a reasonable doubt that the accused knew the coparticipant was armed. *McKim*, 98 Wn.2d at 118. Although the Sentencing Reform Act of 1981 changed the deadly weapon enhancement and effectively superseded *McKim*,[4] its analysis regarding the restricted application of the complicity statute to accountability for sentence enhancements in the absence of specific legislative direction is sound and applicable to the case presently before the court.

As the *McKim* court concluded—and as Howerton argues in this case—a defendant's culpability for an aggravating factor cannot be premised solely upon accomplice liability for the underlying substantive crime absent explicit evidence of the Legislature's intent to create strict liability. Instead, any such sentence enhancement must depend on the defendant's own misconduct. *McKim*, 98 Wn.2d at 117.

In this case, the jury was instructed that the first aggravating factor applied if "[t]he *defendant or an accomplice* committed the murder to conceal the commission of a crime or to protect or conceal the identity of any person committing a crime."[5] (Emphasis added.) As Howerton argues, this interrogatory allowed the jury to attribute the aggravating factor to him without a finding that he possessed the requisite mens rea. In other words, the jury could have concluded that the aggravating factor applied to Howerton based only on the fact that an accomplice (i.e., Barnes) committed the murder to conceal the commission of a crime and without any evidence that Howerton shared the same motivation. Because the language of the instruction allowed application of the aggravating factor without a

---

[4] The weapon enhancement now reads: "The following additional times shall be added to the standard sentence range for felony crimes . . . if *the offender or an accomplice* was armed with a firearm . . . ." Former RCW 9.94A.310(3) (2000) (emphasis added).

[5] The language of this interrogatory varies slightly from the language used in the aggravated murder statute: "The person committed the murder to conceal the commission of a crime or to protect or conceal the identity of any person committing a crime[.]" RCW 10.95.020(9).

502

finding that it specifically applied to Howerton, it was erroneous.

With respect to the second aggravating factor, the jury was asked to decide whether "[t]he murder was committed in the course of, in furtherance of, or in immediate flight from robbery." Howerton argues that because this interrogatory is worded entirely in the passive voice (without identifying an individual actor), it would similarly allow the jury to find the aggravating factor applicable to him based upon the acts of an accomplice. However, in suggesting that the second interrogatory is subject to the same attack as the first, Howerton ignores an important difference in the way they are worded. While the first interrogatory requires the jury to make a decision regarding the existence of a particular mental state (i.e., whether the murder was committed to conceal the commission of another crime or the identity of a person committing a crime), the second interrogatory focuses on a specific act (i.e., a robbery). According to *McKim*, application of this second aggravating factor must be premised on Howerton's own misconduct. Thus, to determine whether this aggravator was properly applied to Howerton, the key inquiry is whether there is evidence sufficient to implicate Howerton in the robbery.

It is undisputed that Howerton was present when the murder and subsequent robbery occurred. Furthermore, the jury heard testimony from several witnesses who claimed to have heard Howerton and Barnes talking several days before the crime about killing the victim and stealing his stereo. Most importantly, Howerton himself admitted taking stereo equipment out of the victim's car shortly after the murder. The victim's stereo equipment and his hat were in fact recovered from Howerton's car after he was arrested. These facts implicate Howerton in the robbery and act as a safeguard against the possibility that the jury attributed the second aggravating factor to Howerton based solely upon the conduct of an accomplice.

Moreover, because the murder and the robbery were so closely related temporally and spatially, and given

Howerton's admitted participation in the robbery, it would have been impossible for the jury to have convicted Howerton of Eby's murder, but to have found the second aggravating factor inapplicable. If the jury had accepted Howerton's version—i.e., that he had no foreknowledge of the murder, that Barnes pulled the trigger, and that he only became involved after the fact—Howerton would have been acquitted on the murder charge. The jury's finding on the murder charge evinces the fact that the jury rejected Howerton's version of events. Although the second interrogatory was worded in such a fashion that the jury theoretically could have found the aggravating factor applicable to Howerton based solely upon the acts of an accomplice, the facts of this case—coupled with the jury's finding on the murder charge—ensure against such a result. Therefore, we uphold the jury's finding as to the second aggravating factor.

2. Effect of *State v. Roberts*

This case was stayed pending the Supreme Court's decision in *State v. Roberts*, 142 Wn.2d 471, 14 P.3d 713 (2000), and both parties have submitted briefing as to its effect. In that case, Michael Roberts was tried, convicted, and sentenced to death for aggravated first degree murder. On appeal, the Supreme Court considered, inter alia, whether the jury instructions in that case "allowed the jury to improperly apply guilt phase accomplice liability principles to penalty phase aggravating factors." *Roberts*, 142 Wn.2d at 500. The court began its analysis of this issue by noting the distinction between the two components of an aggravated first degree murder conviction: (1) an underlying conviction for first degree premeditated murder and (2) the existence of one or more of the aggravating factors listed in RCW 10.95.020. *Roberts*, 142 Wn.2d at 501. Then, after concluding that "the Legislature envisioned, at least in some circumstances, that an accomplice might be subject to the death penalty," *Roberts*, 142 Wn.2d at 502, the court turned to the challenged jury instructions.

Framing the court's analysis of the jury instructions was its recognition of the principle that "[t]he imposition of a

capital sentence is cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments if it is imposed without an individualized determination that the punishment is appropriate." *Roberts*, 142 Wn.2d at 502 (citing *Harmelin v. Michigan*, 501 U.S. 957, 995, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991)). The jury instruction regarding the aggravating factors contained the following interrogatories:

> "(1) The defendant and his accomplice committed the murder to conceal the commission of a crime or to protect or conceal the identity of a person committing a crime; or
>
> "(2) The murder was committed in the course of, in furtherance of, or in immediate flight from a robbery in the first or second degree or a kidnapping in the first degree."

*Roberts*, 142 Wn.2d at 504. As to the first interrogatory, the court noted that at least some form of actus reus was required of the defendant because of the use of the word "and." But the court also acknowledged that the interrogatory failed to specify the extent of the defendant's requisite involvement in the murder. *Roberts*, 142 Wn.2d at 504. The court found the second interrogatory even more problematic because it required no finding of any actus reus on the part of the defendant due to the fact that it was worded in the passive voice. The court ultimately concluded that the aggravating factor instruction was flawed because each interrogatory allowed the jury to "impose capital punishment on Roberts even if he did not personally cause the victim's death or if he was only a minor participant in the underlying events." *Roberts*, 142 Wn.2d at 504. The court found the flaw in the jury instructions to be reversible error:

> In summary, we hold when jury instructions as used in this case allow for the possibility that the defendant was convicted solely as an accomplice to premeditated first degree murder, the defendant *may not be executed* unless the jury expressly finds (1) the defendant was a major participant in the acts that caused the death of the victim, and (2) the aggravating factors under the statute specifically apply to the defendant.

*Roberts*, 142 Wn.2d at 508-09 (emphasis added).

The issue considered by the court in *Roberts* was essentially the same as in this case. However, because *Roberts* was a capital case, and because the court's analysis was so clearly focused on that aspect of the case, its holding is of limited application to our decision here. *Roberts* does make it clear that in some cases, an accomplice to murder can be culpable for aggravating factors. In addition, the court's requirement that aggravating factors must be found to be specifically attributable to the defendant is consistent with *State v. McKim*, 98 Wn.2d 111, 653 P.2d 1040 (1982) and similarly, with our analysis in this case.

### 3. Jury Instructions

After the instructions were read to the jury and after closing arguments from both parties, the trial court submitted to the jury a revised special verdict form which added the phrase "or an accomplice" to the interrogatory regarding the first aggravating factor. Howerton claims that by submitting this altered instruction to the jury without any explanation, the court improperly highlighted the instruction's error.

■ While Howerton is correct in identifying the first interrogatory as an improper statement of the law (see above analysis), he has failed to demonstrate that he was prejudiced by the court's decision to change the instruction and submit it separately. *See In re Pers. Restraint of Hagler*, 97 Wn.2d 818, 826, 650 P.2d 1103 (1982) ("[I]n order to prevail in a collateral attack, a petitioner must show that more likely than not he was prejudiced by the error."). Even if the error in the first aggravating factor was improperly highlighted, the second factor remained unchanged and contained no such error. The jury's finding as to the second aggravator is sufficient to uphold Howerton's sentence.

### 4. Court's Response to Jury Question

During its deliberation, the jury sent out a question regarding the special verdict form:

In Instruction No. 15 the first question starts "The defendant committed the murder to . . ." On the special verdict form the

question starts "The defendant or an accomplice committed the murder to . . ." Which question is correct? "The defendant" or "The defendant or an accomplice."

Br. of Pet'r, at App. C. After the bailiff called defense counsel and informed him of the court's intended reply, the court submitted the following statement: "You should follow the instructions and you should answer the questions as put to you in the special verdict form." Br. of Pet'r, at App. C.

■ Communications between judge and jury in the absence of the defendant or defense counsel are clearly prohibited and therefore constitute error. However, the State may prove that such an error is harmless beyond a reasonable doubt. *State v. Allen,* 50 Wn. App. 412, 419, 749 P.2d 702 (1988) (citing *State v. Caliguri,* 99 Wn.2d 501, 508, 664 P.2d 466 (1983)). Where, as in this case, a trial court's response to a jury question conveys no additional information but directs the jury to refer to previous instructions, no prejudice results. *Allen,* 50 Wn. App. at 419-20. We hold that the trial court's response to the jury question was harmless error.

### 5. RCW 9A.72.090: Bribing a Witness

■ RCW 9A.72.090(1)(a) provides in relevant part:

(1) A person is guilty of bribing a witness if he or she offers, confers, or agrees to confer any benefit upon a witness or a person he or she has reason to believe is about to be called as a witness in any official proceeding or upon a person whom he or she has reason to believe may have information relevant to a criminal investigation . . . with intent to:

(a) Influence the testimony of that person[.]"

Howerton argues that by promising several witnesses leniency in charging in exchange for their testimony, the State violated this statute. Howerton's argument is without merit.

While Howerton cites no Washington cases to support his position, he points this court to the Tenth Circuit's analysis of this issue under the federal bribery statute in *United*

*States v. Singleton*, 144 F.3d 1343 (1998), *rev'd en banc*, 165 F.3d 1297 (10th Cir. 1999). In its original decision, the court held that the federal statute (18 U.S.C. § 201(c)(2)) extended to federal prosecutors and prohibited promises of leniency in exchange for testimony at trial. As noted in the citation above, however, this decision was overruled by the court en banc and as Howerton himself admits, "most federal courts have now ruled that the federal anti-gratuity statute does not cover the government's decision to compensate witnesses in exchange for testimony." Br. of Pet'r, at 49. We similarly reject Howerton's contention that RCW 9A.72.090 applies to the State.[6]

6. Ineffective Assistance of Counsel

Howerton's attorney at trial sought and received authorization and funding to hire neuropsychologist Dr. Lloyd Cripe. After interviewing Howerton, Dr. Cripe concluded that because of his low intellect and stunted psychological development, Howerton was likely to be passive and "more of a follower than a leader in relationships." Decl. of Dr. Cripe, at 2. On appeal, Howerton argues that his trial attorney's failure to present this evidence to the jury constituted ineffective assistance of counsel.

The court in *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995) set forth the test for an ineffective assistance claim:

> To demonstrate ineffective assistance of counsel, a defendant must make two showings: (1) defense counsel's representation was deficient, *i.e.*, it fell below an objective standard of reason-

---

[6] The State points out that the practice of plea bargaining for a reduced charge is specifically authorized by statute:

(2) In certain circumstances, a plea agreement with a defendant in exchange for a plea of guilty to a charge or charges that may not fully describe the nature of his or her criminal conduct may be necessary and in the public interest. Such situations may include the following:

. . . .

(b) The defendant's willingness to cooperate in the investigation or prosecution of others whose criminal conduct is more serious or represents a greater public threat[.]

RCW 9.94A.450(2)(b).

ableness based on consideration of all the circumstances; and (2) defense counsel's deficient representation prejudiced the defendant, *i.e.*, there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different.

Reviewing courts should begin this analysis with a strong presumption that representation was effective. *State v. Brett*, 126 Wn.2d 136, 198, 892 P.2d 29 (1995). "Because the presumption runs in favor of effective representation, the defendant must show in the record the absence of legitimate strategic or tactical reasons supporting the challenged conduct by counsel." *McFarland*, 127 Wn.2d at 336.

As the State points out in this case, Dr. Cripe's conclusion that Howerton would tend to be a "follower" was not consistent with the defense theory at trial; defense counsel argued that Howerton had no involvement in the murder— not as an accomplice or a principal. Defense counsel's decision to refrain from introducing evidence to contradict its own theory of the case was clearly supported by legitimate strategic or tactical considerations. Furthermore, Howerton has presented no evidence to suggest that the outcome would have been different if Cripe's evaluation had been presented to the jury. Thus, we reject Howerton's ineffective assistance claim.

Howerton's personal restraint petition is denied.

BAKER and ELLINGTON, JJ., concur.