IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 29048-4-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TANSY FAY-ARWEN MATHIS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, A.C.J. — Tansy Mathis was convicted of aggravated murder and

other crimes. She assigns error on appeal to two jury instructions: an instruction on the

factors relied on by the State for its charge of aggravated murder and an instruction on

how the jury should complete the deadly weapon enhancement special verdict form.

The court's instruction on one of the factors alleged to support conviction for

aggravated murder was flawed, for the reason argued by Mathis. But the error was

harmless given the jury's finding of a second factor supporting conviction, as to which

the jury was correctly instructed. Mathis's challenge to the instruction on answering the

deadly weapon special verdict form fails in light of the Washington Supreme Court's

intervening decision in *State v. Guzman Nuñez*, 174 Wn.2d 707, 285 P.3d 21 (2012). We affirm.

## FACTS AND PROCEDURAL BACKGROUND

Michelle Kitterman was found murdered on March 1, 2009 on the side of a road, about 14 miles from her home in Tonasket. At the time she was killed, she was 11 weeks pregnant with the child of Daniel Pavek. Investigation would lead the Okanogan County prosecuting attorney to charge four individuals with what the State concluded was a murder for hire: it charged Lacey Hirst, Pavek's wife, who knew her husband was having an affair with Kitterman and wanted her killed; Tansy Mathis, a drug dealer, whom Hirst knew and enlisted to arrange for the murder; David Richards, also a drug dealer and a customer of Mathis, whom Mathis enlisted; and Brent Phillips, whom Richards enlisted. Phillips eventually pleaded guilty to first degree premeditated murder and other crimes and testified against Mathis at her trial.

Phillips testified that at the time of the murder, he was living at Richards's home in Spokane. Richards was providing him with housing and methamphetamine in exchange for Phillips serving as Richards's "tax man." Report of Proceedings (RP) at 793. He testified that as Richards's "tax man," he would "[use] force or scare tactics to get the money that's owed to him." *Id.*

Phillips was introduced to the crime being planned by Mathis the day before Kitterman's murder, when Richards told him that he needed someone to travel with him

2

and Mathis "to go pick up dope, and that there was a snitch that might need to be taxed," meaning a police informant who needed to be intimidated. RP at 797. When the time came to leave for Okanogan County, though, Richards was asleep, so only Phillips accompanied Mathis, who was driving a rental car Lacey Hirst had made available for the crime. Before the two left Spokane, Phillips was told by Mathis that they would receive $1,000 to beat up the snitch and an additional $500 if anyone else got in the way.

Mathis and Phillips drove to Kitterman's home. Before entering, Mathis told Phillips that there could be more money involved—$10,000 plus $5,000 for anybody additional in the way—if things did not go right and someone had to be killed. After the two were invited in by Kitterman, Phillips offered her methamphetamine, the three smoked it together, and Mathis then suggested that they all go to a nearby casino. Kitterman eventually agreed and they all left in the rental car.

As the three neared the casino, Mathis pulled over because Kitterman wanted to smoke more methamphetamine and Mathis said she could not do it in the car. Once Kitterman was out of the car, Mathis told Phillips that Kitterman was the snitch. Phillips took this as his cue to assault Kitterman. Mathis soon joined him in the assault. She had retrieved an ice pick-like weapon from the car; it was a three-sided file that belonged to Richards. Phillips later testified that it was Richards's favorite weapon. As Phillips choked Kitterman, who was on the ground, Mathis began stabbing her in the stomach. When Mathis told Phillips to "finish it," he stabbed Kitterman several times in the back.

3

RP at 826. Phillips threw Kitterman to the side of the road and he and Mathis left. After abandoning Kitterman, Mathis and Phillips cleaned the rental car.

Before returning to Spokane, Mathis handed Phillips an envelope containing $500 to give to Richards. Phillips told her Richards would prefer methamphetamine, so Mathis took the money back and gave Phillips drugs to give to Richards.

Upon Phillips's return to Spokane, Richards asked about payment from Mathis and indicated awareness that something "had happened." Phillips testified:

> A    He kept asking me what happened. And I wouldn't tell him what happened. And then I ended—he asked me again, he's, "Oh, come on, what happened." And I told him, I said, "Well, the shit happened, man; know what I mean?"
> And he said, "Well, when you get ready to tell me, you know, I'm here to listen." That's what he said.
> Q    At some point did he ask you for payment?
> A    He asked me if I had anything for him, from Tansy. And I said,—I said "Yeah," and I handed him the dope. And he looked at it and he said, "This is all?" And I said, "Yeah."

RP at 842. Phillips testified that Richards was upset upon seeing the amount of methamphetamine provided and, after that, was "trying to get a hold of Ms. Mathis." RP at 843.

Mathis was eventually charged as principal or accomplice with aggravated murder or alternatively felony murder, and with first degree manslaughter (unborn quick child), first degree kidnapping, and tampering with physical evidence. She was charged with deadly weapon enhancements on all but the tampering count.

4

Mathis and Richards were tried together and each testified. Mathis claimed that she made the trip to Tonasket on the night of Kitterman's murder only to drop off drugs and talk to Kitterman about leaving Pavek. She said Richards was supposed to have accompanied her to make sure she would be safe but when it was time to leave, only Phillips showed up. Mathis claimed that it was Phillips who threw Kitterman to the ground, punched her, stabbed her with the file, and left her on the side of the road.

The jury rejected Mathis's defense and found her guilty as charged on all counts. It answered "yes" to all of the court's special verdict questions addressing aggravating factors and deadly weapon enhancements.[1] The parties' appeals were originally consolidated but were later severed.

## ANALYSIS

Mathis raises two assignments of error on appeal: first, that the jury was incorrectly instructed that it must unanimously answer "no" to the special verdict form and, second, that the instruction to the jury on the factors relied upon by the State for the aggravated murder charge improperly permitted the jury to find one factor based on an accomplice's conduct.

The first assignment of error is readily addressed. Mathis raised it before the Washington Supreme Court decided *Guzman Nuñez*, 174 Wn.2d 707, in which it

---

[1] The jury found Richards guilty of second degree felony murder and first degree manslaughter.

overruled two prior decisions[2] and found that the pattern jury instruction used in Mathis's case correctly stated the law. Mathis concedes that her first assignment of error fails in light of *Guzman Nuñez*.

The second assignment of error correctly identifies a problem with the instruction on the factors relied upon by the State for its charge of aggravated murder but, for reasons explained below, the error was harmless.[3]

"Aggravated first degree murder is not a crime in and of itself," *State v. Roberts*, 142 Wn.2d 471, 501, 14 P.3d 713 (2000); instead, "[a] person is guilty of aggravated first degree murder . . . if he or she commits first degree murder as defined by RCW 9A.32.030(1)(a)" and one or more of 14 statutory aggravating circumstances exists. RCW 10.95.020. In Mathis's case, the State relied on either of two statutory aggravating factors: that "[t]he person committed the murder pursuant to an agreement that he or she would receive money or any other thing of value for committing the murder" as provided by RCW 10.95.020(4), or that "[t]he murder was committed in the course of, in furtherance of, or in immediate flight" from one of five crimes as provided by RCW

---

[2] *State v. Bashaw*, 169 Wn.2d 133, 234 P.3d 195 (2010) and *State v. Goldberg*, 149 Wn.2d 888, 72 P.3d 1083 (2003).

[3] Mathis raises this objection to the special verdict instruction for the first time on appeal. *State v. Roberts*, 142 Wn.2d 471, 500-01, 14 P.3d 713 (2000) concluded that a similar special verdict instruction relating to accomplice liability was a manifest error affecting a constitutional right that could be properly raised for the first time on appeal. The issue is properly before us.

10.95.020(11). In Mathis's case, the State alleged that the associated crime was kidnapping in the first degree. *See* RCW 10.95.020(11)(d).

Mathis argues that the court erred in giving instruction 10 because it allowed the jury to find the factor based on Richards's conduct rather than her own:

> If you find the defendant, Tansy Mathis, guilty of premeditated murder in the first degree as defined in Instruction 5, you must then determine whether any of the following aggravating circumstance[s] exists[s]:
> 1. The defendant, Tansy Mathis *or one with whom she was an accomplice*, committed the murder pursuant to an agreement that *he or she* would receive money or any other thing of value for committing the murder; or
> 2. The murder was committed in the course of, in furtherance of, or in immediate flight from kidnapping in the first degree.
>
> . . . .
>
> For any of the aggravating circumstance[s] to apply, the defendant, Tansy Mathis, must have been a major participant in acts causing the death of Michelle Kitterman and the aggravating factors must specifically apply to the defendant's actions.

Clerk's Papers (CP) at 29 (emphasis added) (most alterations in original).

"[A] defendant's culpability for an aggravating factor cannot be premised solely upon accomplice liability for the underlying substantive crime absent explicit evidence of the Legislature's intent to create strict liability. Instead, any such sentence enhancement must depend on the defendant's own misconduct." *In re Pers. Restraint of Howerton*, 109 Wn. App. 494, 501, 36 P.3d 565 (2001) (citing *State v. McKim*, 98 Wn.2d 111, 117, 653 P.2d 1040 (1982)). In *Howerton*, as here, the defendant argued that a special verdict form was fatally flawed because it allowed the jury to find him guilty of aggravated

7

murder based solely on another person's conduct. Consistent with *McKim*, the *Howerton* court recognized legislative intent as controlling and looked to the language of RCW 10.95.020 to determine whether it reflected a legislative intent to create strict liability for the factors at issue.

One factor charged in *Howerton*—that "[t]he person committed the murder to conceal the commission of a crime or to protect or conceal the identity of any person committing a crime"—required that "the person" have a particular mens rea. RCW 10.95.020(9). The *Howerton* court construed that language to require the defendant himself or herself to have had the culpable motivation. Accordingly, it found error where the jury was instructed that it could find the factor based on an accomplice's mens rea. The same is true here of the charged factor that "the person committed the murder pursuant to an agreement." It is Mathis, the defendant, who must have had the requisite agreement. While the jury was presented with evidence that she had such an agreement, it was also presented with evidence of such an agreement on the part of Richards. Because the court's instruction allowed the jury to find the factor based on Richards's agreement, it was erroneous.

The State argues that the final paragraph of the instruction, requiring that Mathis be "a major participant" and that the aggravating factor "specifically apply" to her actions, saves the instruction from error. We disagree. The "major participant" language is required to address Eighth Amendment issues in death penalty cases and may also have

8

been required here.[4] But the "major participant" language only contradicted the erroneous direction earlier in the instruction; it did not cure it. It is well settled it is a prejudicial error to give irreconcilable instructions upon a material issue in the case. *State v. Studd*, 87 Wn. App. 385, 389, 942 P.2d 985 (1997) (citing *Hall v. Corp. of Catholic Archbishop*, 80 Wn.2d 797, 804, 498 P.2d 844 (1972)), *rev'd on other grounds*, 137 Wn.2d 533, 973 P.2d 1049 (1999). Where instructions are inconsistent or contradictory on a material point, their use is prejudicial because it is impossible to know what effect they had on the verdict. *Id.* (citing *Hall*, 80 Wn.2d at 804). Regardless of the last paragraph, the language highlighted in the instruction above explicitly authorized the jury to find the factor based on an agreement by Mathis "or one with whom she was an accomplice."

The State has a better response when it argues that any error in instructing on the first factor charged as supporting aggravated first degree murder was harmless because the jury answered "yes" on the special verdict form addressing the second factor charged. Here again, *Howerton* presented the same situation. A second aggravating factor charged in *Howerton* was the second factor charged here: that "the murder was committed in the course of, in furtherance of, or in immediate flight" from one of the crimes identified by

_____

[4] The issue has not yet been decided. *See State v. Thomas*, 166 Wn.2d 380, 388 n.5, 208 P.3d 1107 (2009); *State v. Whitaker*, 133 Wn. App. 199, 234-35, 135 P.3d 923 (2006).

9

the statute. In the case of this second factor, the court in *Howerton* recognized that the legislature had focused "on a specific act," that being the associated crime. 109 Wn. App. at 502. It reasoned that a specific act-based factor would be properly premised on Howerton's own misconduct and therefore properly applied to him as long as there was evidence sufficient to implicate Howerton in the associated crime, which, in *Howerton*, was a robbery.

Applying *Howerton*'s analysis, the key inquiry here in the case of the second factor relied upon by the State is whether there was evidence sufficient to implicate Mathis in the associated crime of kidnapping. There was. And Mathis concedes as much; she does not assign error to the court's instruction or the jury's special verdict on the second factor.

The jury answered "yes" to the special verdict form inquiring whether the State had proved beyond a reasonable doubt that "[t]he murder was committed in the course of, in furtherance of, or in immediate flight from kidnapping in the first degree." CP at 76. That answer is sufficient to sustain the trial court's judgment and sentence for aggravated murder.

No. 29048-4-III
*State v. Mathis*

Affirmed.

A majority of the panel has determined that this opinion will not be printed in the

Washington Appellate Reports but it will be filed for public record pursuant to RCW

2.06.040.

Siddoway, A.C.J.

WE CONCUR:

Brown, J.

Kulik, J.