2017 NOV 27 AM 9: 16



## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,　　　　　 )
　　　　　　　　　　　　　　　　　 )　　DIVISION ONE
　　　　　　Respondent,　　　　　　 )
　　　　　　　　　　　　　　　　　 )　　No. 74856-4-I
　　　　v.　　　　　　　　　　　　　 )
　　　　　　　　　　　　　　　　　 )　　UNPUBLISHED OPINION
AARON EUGENE HOWERTON,　　　 )
　　　　　　　　　　　　　　　　　 )
　　　　　　Appellant.　　　　　　　 )　　FILED: November 27, 2017
　　　　　　　　　　　　　　　　　 )

DWYER, J. — Aaron Howerton appeals from the trial court's order denying his CrR 7.8 motion to vacate his judgment and sentence and for a new trial. On appeal, Howerton contends that the trial court erred by ruling that the collateral attack on his judgment was time barred. Finding no error, we affirm.

I

Aaron Howerton was charged and convicted of first degree aggravated murder in May 1995 and was sentenced to a term of life in prison. We affirmed his conviction. State v. Howerton, noted at 88 Wn. App. 1080, review denied, 136 Wn.2d 1021 (1998). Howerton then filed a personal restraint petition, which we denied on December 17, 2001. In re Pers. Restraint of Howerton, 109 Wn. App. 494, 36 P.3d 565 (2001). The facts of the underlying case were set out in our decision denying the personal restraint petition and are reproduced here:

On May 1, 1994, Wilder Eby was shot and killed and his car and other property were stolen. Eby's mother reported him missing when he did not return home the next day. Several days later, when the police discovered that Howerton had some of Eby's stereo equipment in his car, they began to suspect his involvement in Eby's disappearance. The police obtained a search warrant for Howerton's car and confronted him with their suspicions. Howerton told the police that [Timothy] Barnes had shot Eby. Howerton explained that he, Barnes, and Eby had driven to a remote area to smoke marijuana. He claimed that at one point he asked Eby (who was driving) to stop the car so that he could urinate. As Howerton was urinating on the side of the road, he heard a gunshot and turned around to see Barnes standing over Eby's dead body with a gun in his hand. Howerton admitted that he proceeded to help Barnes burn Eby's body and his car. He also admitted taking some of Eby's stereo equipment and using Eby's bank card to withdraw cash on several occasions. Although Howerton maintained that he had no prior knowledge of Barnes's intent to kill Eby, he admitted hearing Barnes joking about it several days before the shooting. The State charged Howerton with aggravated first degree murder. The State alleged the existence of two aggravating factors: (1) that the murder was committed to conceal a crime or the identity of a person committing a crime and (2) that the murder was committed in the course of, in furtherance of, or in flight from robbery.

Barnes gave the police a different account of what happened. Barnes claimed that Howerton approached him and asked for his help in murdering and robbing Eby. After agreeing to help, Barnes said that he, Howerton, and Eby drove to a secluded area upon Howerton's suggestion. When Howerton asked Eby to stop the car so that he could urinate, the three men got out. It was at that point that Howerton shot Eby. Barnes pleaded guilty to first degree murder and agreed to testify against Howerton.

At trial, several witnesses testified that both Howerton and Barnes talked about killing and robbing Eby beforehand, and similarly, both claimed responsibility afterwards. The State argued that Howerton planned the murder/robbery, pulled the trigger, and took Eby's stereo. Because the witness testimony was conflicting, however, the State alternatively maintained Howerton's culpability as an accomplice.

The jury found Howerton guilty of first degree premeditated murder, and by special verdict found that both aggravating factors existed. Howerton was sentenced to life imprisonment without the possibility of release or parole.

Howerton, 109 Wn. App. at 496-97.

In 2008, Howerton wrote a letter to Barnes's ex-girlfriend, Jodie McAlister. In her reply letter, McAlister stated that Barnes had confessed to her that he had shot Eby. McAlister stated that she had told her mother what Barnes had done the morning following his confession. Howerton relayed McAlister's letter to his father, who then contacted an attorney. In September 2009, McAlister and her mother wrote statements detailing the events surrounding Barnes's confession.

Howerton's counsel purportedly lost Howerton's file sometime between 2009 and 2010. In 2010, Howerton fired his attorney and retained new counsel—John Crowley. Pursuant to a CrR 7.8(b)[1] motion for a new trial, Howerton filed this collateral attack on his conviction on March 27, 2015.

McAlister offered testimony at the CrR 7.8 hearing. McAlister testified that Barnes was her boyfriend in 1994. McAlister testified that, before Eby was murdered, she took an out-of-town trip with Eby, Howerton, and another friend. McAlister testified that Barnes was jealous and thought that McAlister was cheating on him with Eby. McAlister testified that, following Eby's murder, Barnes had confessed to her that he shot Eby. McAlister testified that Barnes threatened to kill her if she told anyone.

McAlister testified that she contacted the City of Snohomish Police Department the following morning and that an officer, Asa Bricker, came to her house later that day. McAlister testified that she told Bricker what had happened

---

[1] CrR 7.8(b) provides, in pertinent part:
On motion and upon such terms as are just, the court may relieve a party from a final judgment, order, or proceeding for the following reasons:
. . .
(2) Newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under rule 7.5.

and that Bricker drove her to the police station to write a statement. McAlister and her mother were never contacted by the prosecutor's office to testify at the criminal trial.

Asa Bricker passed away in December 2010.

Jesus Castillo, deputy sheriff at the Snohomish County Sheriff's Office at the time of the murder, also testified at the CrR 7.8 hearing. Castillo testified that he was involved in the investigation into Eby's murder. Castillo testified that he contacted McAlister and took her statement during the course of the investigation.[2] Castillo testified that he knew Bricker but could not recall if Bricker was involved in the investigation. Castillo testified that, if Bricker did have information about Eby's murder, Castillo would have had Bricker write a statement.

John Padilla, a detective at the Snohomish County Sheriff's Office at the time of the murder, also testified at the CrR 7.8 hearing. Padilla testified that he was the lead detective in the investigation into Eby's murder. Padilla testified that, based on the statement that McAlister provided to Castillo, there was no reason to follow up with her.[3] Padilla testified that he did not recall seeing any witness statements taken by Bricker.

The trial court found that Howerton did not act with reasonable diligence when he filed the CrR 7.8 motion to vacate his judgment. The trial court also

---

[2] In her written statement, McAlister stated that she was told by Michael Searles that "Erin and some Tim guy were going to kill some guy" and then later told by some friend that "some Tim guy killed this guy I met."

[3] Padilla testified that police had interviewed Searles and eliminated him as a suspect prior to trial. Because McAlister could not remember who else had given her information regarding the murder, there was no reason to contact her again.

found that neither McAlister nor her mother gave Bricker a written or oral statement concerning Eby's alleged confession. The trial court found that the State did not withhold any statements or evidence from Howerton. Accordingly, the trial court concluded that Howerton's CrR 7.8 motion to vacate his judgment was an untimely collateral attack, that he was not excused from the one year time limit for filing his motion because he did not exercise due diligence in filing the motion, and that his due process rights were not violated because the State had not suppressed evidence and because the evidence was cumulative. Howerton now appeals.

## II

Howerton contends that the trial court erred by ruling that his CrR 7.8 motion was time barred. This is so, he asserts, because (1) he acted with reasonable diligence in bringing the motion, (2) his failure to bring the motion within one year is excused by ineffective assistance of counsel, and (3) the doctrine of equitable tolling should be applied. Each contention is addressed in turn.

## A

Howerton first contends that the trial court erred by ruling that his motion was time barred. This is so, he asserts, because his motion was based on newly discovered evidence and because he exercised reasonable diligence in discovering the evidence and filing the motion. We disagree.

We review a trial court's factual findings for substantial evidence and conclusions of law de novo. State v. Schwab, 141 Wn. App. 85, 91, 167 P.3d

1225 (2007). "Generally, no collateral attack on a judgment and sentence may be filed more than a year after the judgment is final if the judgment and sentence is valid on its face and was rendered by a court of competent jurisdiction." Schwab, 141 Wn. App. at 90 (citing RCW 10.73.090(1)). An exception to the one year time limit exists for motions based solely on the grounds of newly discovered evidence "if the defendant acted with reasonable diligence in discovering the evidence and filing the petition or motion." RCW 10.73.100(1). The defendant bears the burden of proving that an exception to the one year time limit applies. Shumway v. Payne, 136 Wn.2d 383, 400, 964 P.2d 349 (1998).

"The purpose underlying the time limit in RCW 10.73.090 is to manage the flow of postconviction collateral relief petitions by requiring collateral attacks to be brought promptly. Limiting attacks to a one-year period, except in instances provided in RCW 10.73.100, also promotes finality of judgments." In re Pers. Restraint of Bonds, 165 Wn.2d 135, 141, 196 P.3d 672 (2008). "[C]ollateral relief 'undermines the principles of finality of litigation, degrades the prominence of the trial, and sometimes costs society the right to punish admitted offenders.'" Shumway, 136 Wn.2d at 399 (internal quotation marks omitted) (quoting In re Pers. Restraint of Cook, 114 Wn.2d 802, 809, 792 P.2d 506 (1990)).

The United States Supreme Court has recognized the significance of time limitations on collateral attacks.

> Collateral review of a conviction extends the ordeal of trial for both society and the accused. As Justice Harlan once observed, "[b]oth the individual criminal defendant and society have an interest in insuring that there will at some point be the certainty that comes with an end to litigation, and that attention will ultimately be focused not on whether a conviction was free from error but rather on

> whether the prisoner can be restored to a useful place in the community." Sanders v. United States, 373 U.S. 1, 24-25, [83 S. Ct. 1068, 10 L. Ed. 2d 148] (1963) (dissenting opinion). See also Hankerson v. North Carolina, 432 U.S.[ 233,] 247[, 97 S. Ct. 2339, 53 L. Ed. 2d 306 (1977)] (POWELL, J., concurring in judgment). By frustrating these interests, [collateral relief] undermines the usual principles of finality of litigation.
>
> Liberal allowance of [collateral relief], moreover, degrades the prominence of the trial itself. A criminal trial concentrates society's resources at one "time and place in order to decide, within the limits of human fallibility, the question of guilt or innocence." Wainwright v. Sykes, [433 U.S.[ 72,] 90, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977)]. Our Constitution and laws surround the trial with a multitude of protections for the accused. Rather than enhancing these safeguards, ready availability of habeas corpus may diminish their sanctity by suggesting to the trial participants that there may be no need to adhere to those safeguards during the trial itself.
>
> We must also acknowledge that writs of habeas corpus frequently cost society the right to punish admitted offenders. Passage of time, erosion of memory, and dispersion of witnesses may render retrial difficult, even impossible. While a habeas writ may, in theory, entitle the defendant only to retrial, in practice it may reward the accused with complete freedom from prosecution.

Engle v. Isaac, 456 U.S. 107, 126-28, 102 S. Ct. 1558, 71 L. Ed. 2d 783 (1982) (footnote omitted).

Here, Howerton first contacted McAlister and was told of Barnes's alleged confession in 2008. Yet, Howerton did not file the collateral attack on the judgment until 2015. Even assuming that Howerton could not have discovered this evidence with due diligence prior to the entry of judgment against him, he must also show that he acted with due diligence in bringing the motion. State v. Wheeler, 183 Wn.2d 71, 80, 349 P.3d 820 (2015). He did not.

This case presents a classic example of unreasonable delay. Thirteen years had elapsed between Howerton's conviction and his discovery of alleged new evidence. Upon receiving this new evidence, Howerton did nothing for one

year. Then, Howerton obtained a written statement from McAlister. It is important to note that, at this time, McAlister was fit to testify and Bricker was alive. Yet Howerton did not file his collateral attack for another six years. In the 20 years since trial (now 22), not only have the memories of witnesses faded but the only witness who could corroborate or contravene McAlister's claims—Bricker—has died. It does not appear that Howerton made any attempt to contact Bricker regarding McAlister's statement in the two years between discovering the alleged new evidence and Bricker's death.

Howerton has offered no explanation for why he could not file his collateral attack pro se within a reasonable amount of time after discovering this evidence.[4] Howerton asserts that his attorney failed him and that, by the time that his second attorney contacted McAlister, drug addiction prevented McAlister from testifying. Even if Howerton's assertions are true, they do not make his seven year delay reasonable. Howerton's unreasonable delay in filing his collateral attack has irreparably impaired the truth-seeking function of any possible retrial. Engle, 456 U.S. at 126-28.

B

Howerton next contends that, even if he failed to exercise reasonable diligence in bringing his collateral attack, his failure should be excused because he received ineffective assistance of counsel. He is wrong.

At his CrR 7.8 hearing, Howerton testified that he hired an attorney after learning of Barnes's confession. This attorney purportedly contacted McAlister

---

[4] Or insist that his attorney do so.

-8-

and then lost Howerton's file. In 2010, Howerton hired Crowley as replacement counsel. Crowley attempted to contact McAlister on several occasions but McAlister was a drug user and was unable to speak with Crowley about her statement. Crowley did not successfully talk with McAlister until 2015. Crowley argued at trial that he filed the CrR 7.8 motion within three months of determining that McAlister's written statement was valid.

There is no constitutional right to counsel in filing a postconviction collateral attack. Bonds, 165 Wn.2d at 143. Collateral attacks can be—and often are—filed pro se. Pro se petitioners are required to comply with applicable rules and statutes and are held to the same rules and standards as attorneys. Bonds, 165 Wn.2d at 143. Because Howerton had no right to the assistance of counsel in filing this collateral attack, his claim of ineffective assistance of counsel necessarily fails. Nothing prevented Howerton from acting with reasonable diligence and filing his motion pro se.[5]

C

Finally, Howerton contends that the doctrine of equitable tolling should be applied to his collateral attack. We disagree.

"The doctrine of equitable tolling permits a court to allow an action to proceed when justice requires it, even though a statutory time period has nominally elapsed." State v. Duvall, 86 Wn. App. 871, 874, 940 P.2d 671 (1997).

---

[5] In his reply brief, Howerton asserts that his contention is *not* that he has a right to effective assistance of counsel in filing a collateral attack. Rather, Howerton asserts that one relevant consideration in determining reasonable diligence might be whether he received effective assistance of counsel. Howerton's attempt to distinguish the claim is unpersuasive. Howerton provides no authority in support of his assertion that ineffective assistance of counsel excuses an otherwise unreasonable delay in filing a collateral attack.

"Appropriate circumstances for equitable tolling include 'bad faith, deception, or false assurances by the defendant, and the exercise of diligence by the plaintiff.'" In re Pers. Restraint of Hoisington, 99 Wn. App. 423, 430, 993 P.2d 296 (2000) (internal quotation marks omitted) (quoting Duvall, 86 Wn. App. at 875). Equitable tolling is allowed only in "the narrowest of circumstances" and "where justice requires." In re Pers. Restraint of Carter, 172 Wn.2d 917, 928, 263 P.3d 1241 (2011).

As a preliminary matter, Howerton did not raise the issue of equitable tolling in the trial court and has therefore waived the issue on appeal. State v. Lazcano, 188 Wn. App. 338, 355, 354 P.3d 233 (2015), review denied, 185 Wn.2d 1008 (2016).

But Howerton's contention also fails on the merits. Howerton asserts that equitable tolling should be applied because (1) McAlister was addicted to drugs and unavailable to testify, and (2) Howerton relied on the assurances of his attorneys to protect his legal interests. To the contrary, neither of Howerton's assertions establish "'bad faith, deception, or false assurances by the defendant[] and the exercise of diligence by the plaintiff.'" Hoisington, 99 Wn. App. at 430 (quoting Duvall, 86 Wn. App. at 875). Nothing prevented Howerton from acting with reasonable diligence and filing his collateral attack pro se when he discovered the evidence. As discussed herein, McAlister was available to testify when she first told Howerton about Barnes's confession and McAlister was available to testify one year later when she gave her written statement. These circumstances are not so narrow as to permit equitable tolling.

- 10 -

D

Howerton failed to act with reasonable diligence in filing his collateral attack. His unreasonable delay is not excused by the conduct of others. Accordingly, the trial court did not err by ruling that his CrR 7.8 motion was time barred.[6,7]

Affirmed.

We concur:

_Trickey, ACJ_

_Cox, J._

---

[6] Howerton also contends that his conviction should be vacated and a new trial granted based on the newly discovered evidence and because his due process rights were violated. Because we conclude that Howerton's collateral attack on his conviction is time barred, we decline to reach these issues.

[7] We also deny Howerton's motion to take judicial notice of the fact that his prior two attorneys resigned from the Washington Bar Association. This evidence was not before the trial court and, accordingly, we will not consider it on appeal. State v. Curtiss, 161 Wn. App. 673, 703, 250 P.3d 496 (2011) (citing RAP 9.11).